## The City of Philadelphia *versus* Burgin.

*Evidence on sci fa. sur claim for curbing and paving in Philadelphia.*

In a *scire facias* by the city of Philadelphia against a property-owner, sur claim for curbing and paving under the ordinance of May 10th 1858, and the Act of March 11th 1846; where the pleas are *non assumpsit*, and payment without any notice of special matter: it is error to require the plaintiff to prove a direct contract between the city commissioner and the contractor for the execution of the work, especially after the work has been adopted, as also to reject evidence that the contractor was employed by one of the commissioners, and that the defendant had waived his right to the notice required by the ordinance.

ERROR to the Common Pleas of *Philadelphia*.

This was a *scire facias* by The City of Philadelphia, to the use of Emanuel Peters, to the use of Shaler, Kierstead & Co., against George Burgin, owner, *sur claim* for curbing and paving footway in front of defendant's property on Orthodox street, Frankford. The pleas were *non assumpsit*, and *payment*, with leave to give the special matter in evidence.

The material facts of the case were as follows:—In 1858 petitions of property-holders were presented to the councils of Philadelphia for the curbing and paving of a number of streets in Frankford, twenty-third ward of the city of Philadelphia. On the 10th of May 1858, an ordinance of the Select and Common

50   539
135  339
50        539
36 SC  573
50        539
38SC    544

Councils was approved in the words following, viz.: "Resolved, That the highway department is hereby authorized to notify the owners of property who have not curbed and paved their footways on the following named streets, to wit: Bridge street, from the Frankford creek to the Tacony plank road; Frankford street, from Paul street to the Little Tacony creek; Leiper street, from Orthodox to Church street; Orthodox, from Leiper street to the Tacony plank road," * * * (and ten other named streets,) * * * in the twenty-third ward, and Manheim street, from Germantown avenue to the plank road, in the twenty-second ward, to set their curb, grade and pave their footways in front of their respective properties, in accordance with the laws and ordinances made and provided for the same; and in case parties notified neglect or refuse to comply with their respective notices within thirty days, the commissioner of highways is hereby authorized to employ such parties on such portions of the work, who will engage to do the same, and collect the proper costs thereof from the respective owners."

At the time this ordinance was passed, John McCarthy was chief commissioner of highways, but his term of office expired on or about the middle of July 1858. Conrad B. Andress was his successor, who remained in office until July 18th 1859, when Jacob Shantz was appointed.

The ordinance of July 31st 1855 provided for four commissioners, who, with the chief commissioner, were to constitute the board. There was no evidence showing who the four commissioners of highways were at the time the ordinance of May 10th 1858 was passed; but the evidence showed that John S. Rittenhouse was commissioner of highways at the time the curbing and paving in question was done.

Upon the passage of the ordinance of May 10th 1858, John McCarthy, the then chief commissioner of highways, entered into a verbal contract with Emanuel Peters, to curb and pave the footway of all the streets named in the ordinance upon default being made by the property-holders.

There was evidence on the trial that the defendant in this case received notice under the ordinance in June 1858, and also another notice in January 1859, and having made default for more than thirty days, Emanuel Peters, under his contract, did the curbing and paving in the months of August and September 1859, and the claim in question was filed therefor November 2d 1859.

On the trial of the case, the plaintiff gave in evidence the ordinance of May 10th 1858, and also the claim filed, and then closed.

The counsel of defendant having opened their case, offered to prove by Jacob Shantz that he was chief commissioner of highways at the time the work in question was done, and that he did

[City of Philadelphia v. Burgin.]

not approve the work, and gave no authority to Emanuel Peters to do the same. This offer was objected to by plaintiff's counsel, but the objection was overruled by the court and the evidence admitted.

The witness then testified in substance that he had been chief commissioner of highways since July 18th 1859, and gave no authority to pave Orthodox street. The defendant's counsel then produced evidence as to the quality and character of the work.

The court having intimated that the plaintiffs could not recover unless they produced evidence that Emanuel Peters had been duly employed to do the work; the plaintiff's counsel then called Daniel George, who testified that he served notice on defendant to curb and pave the footway, January 19th 1859. They also called John McCarthy, who testified that he believed notices were served on defendant in June 1858. The plaintiffs' counsel then called Conrad B. Andress, who succeeded John McCarthy as chief commissioner of highways, and who testified that he was not asked to approve the work; that he knew that Peters was going on with the work; that he entered into no written or verbal contract with Mr. Peters; that he considered that his predecessor had employed Mr. Peters, and supposed he could not go behind the agreement.

The plaintiffs' counsel then recalled Mr. McCarthy, to prove that he, as chief commissioner of highways, employed Mr. Peters to do the work.

This evidence was objected to by defendant's counsel, on the ground that the work in question was not done until McCarthy had gone out of office, and that McCarthy therefore had no power to make the agreement with Peters. The objection was sustained by the court and the evidence ruled out.

The plaintiffs' counsel then called Peter Augustine, who testified that he did the paving in question for Mr. Peters; that while he was doing the work, the defendant asked him who authorized him to do the work, and upon being informed that Mr. Peters was the person, the defendant said "it was all right." The plaintiffs' counsel then offered to prove by this witness: 1st. That the defendant waived his right to notice required by the ordinance; and 2d. That he stated to the workman who was going on with the work, that it was all right, to go ahead. This offer was objected to by defendant's counsel, and overruled by the court. The plaintiffs' counsel then called John S. Rittenhouse, who testified that he was commissioner of highways from July 1858 to the then present time.

The plaintiffs' counsel then offered to prove by him, "That after the expiration of the thirty days' notice to defendant, the highway department by its commissioner authorized and employed Mr. Peters to do this work, and the commissioner reported the same

[City of Philadelphia *v.* Burgin.]

to the board of commissioners of highways, who approved of the same. Offer admitted on proof that the commissioner named in the offer was the chief commissioner. On the plaintiffs' counsel replying that they did not offer to prove he was chief commissioner, the court overruled the offer.

The plaintiffs' counsel then offered to prove, " that each commissioner had a distinct district to which his duties were confined, and that the commissioner who made the contract with Peters had the district where the work was done at the time when the work was done. Offer admitted on proof that the commissioner who made the contract was the chief commissioner, which plaintiffs' counsel did not propose to prove. The offer was then overruled by the court.

The witness then testified, " I had charge of the district in which this paving was done in 1859, as commissioner of the highway department; I was there several times to see the work as commissioner. The work came under the immediate notice of the supervisor, and under my general notice. I saw the work going on; I don't recollect reporting that this work was going on to the chief commissioner; there was no objection made to it."

The plaintiffs' counsel then offered to prove by this witness that the employment of Mr. Peters to do this work was within the scope of his authority, but the defendant's counsel objected to the question, and the court sustained the objection.

The court having intimated that the evidence was fatally defective in not showing a proper employment of Mr. Peters to do the work, plaintiffs' counsel declined to call any more witnesses as to the quality and character of the work upon agreement of defendant's counsel, that no question of this character should be raised in the Supreme Court.

The plaintiffs' counsel then submitted the following points :—

1. That under the law, evidence, and pleadings in this case, the only questions for the jury are as to whether the work was done, and the price thereof, and whether the same had been paid for or released.

2. If the jury believe the charge in the lien for the work in question is a fair and reasonable charge, their verdict under the law, pleadings, and evidence in the case, should be for the plaintiffs for the full amount of the claim.

3. That no evidence of notice to the defendant is required to enable the plaintiffs to recover, nor is it necessary to prove a contract.

4. That it is not necessary to prove an actual employment of the contractor for the work by the commissioner of highways.

5. That such employment may be inferred from any of the commissioners of the highway department, having knowledge of the progress of the work and making no objection to it.

[City of Philadelphia *v.* Burgin.]

The learned judge of the Common Pleas instructed the jury as follows:—

"This suit is brought by the plaintiff to the use of the equitable owner for paving. In the view of the law I take, it will be hardly necessary for you to look at the testimony. There is a vital point in the cause which is not substantiated by any evidence, and which is fatal to the plaintiff's claim. The law is to be given to you by answering the points.

"1st point in one sense affirmed. While, however, the defence is limited to the three points named in this point, the Act of Assembly was not intended to apply to a cause where there was no authority from the persons properly authorized to give the authority. If no notice was given to defendant there was no authority to do the work, and no right to file a claim. It was a fraud upon defendant.

"2. I affirm this point, but the jury must be satisfied that there was authority given to Peters to do the work, and that the work was done.

"3. I refuse to charge as requested in this point; notice must be given to defendant. Under the ordinances, a contract to do the work must be proved, or the work sanctioned by the chief commissioner.

"4. It is necessary to prove the employment of the contractor, Mr. Peters, by the chief commissioner and no other person, or that the chief commissioner sanctioned the work while it was progressing.

"5. I refuse and decline so to charge.

"As the plaintiffs have not shown the existence of any contract entered into between the chief commissioner of highways and Emanuel Peters, for the doing of this work, and as there is no evidence that the work has ever been sanctioned by the chief commissioner of highways, and no evidence of any waiver of notice by the defendant, the jury is instructed to render a verdict for defendant."

Thereupon the jury, in pursuance of the instructions from the court, rendered a verdict for the defendant. This writ was then sued out for the city, and the following errors assigned:—

1. The court below erred in charging the jury "that there was a vital point in the cause which is not substantiated by any evidence, and which is fatal to the plaintiffs' claim."

2. In charging the jury as follows, viz.: "As the plaintiffs have not shown the existence of any contract entered into between the chief commissioner of highways and Emanuel Peters, for the doing of this work, and as there is no evidence that the work has ever been sanctioned by the chief commissioner of highways, and no evidence of any waiver of notice by the defendant, the jury is instructed to render a verdict for the defendant."

3. In not affirming the points submitted by plaintiffs.

4. In not overruling the defendant's offer to prove "that the commissioner of highways, Jacob Shantz, did not approve the work mentioned in the lien, and that when the work was done he was commissioner of highways, and gave no authority to do the work to Emanuel Peters."

5. In overruling plaintiffs' offer to prove by John McCarthy, who was chief commissioner of highways from July 1856 to July 1858, that he as chief commissioner of highways employed Mr. Peters to do the work in question.

6. In overruling the following questions propounded to John McCarthy, chief commissioner of highways, by the plaintiffs' counsel, viz.:—

I. "Did you employ Mr. Peters to do this work as commissioner of highways ?"

II. "What did you say to your successor, Mr. Andress, relative to the contract with Peters to do this paving ?"

III. "On reporting to Mr. Andress what you had done in giving the contract to Peters, was Mr. Andress satisfied with it or not ?"

IV. "Did you inform Mr. Conrad B. Andress that you had employed Mr. Peters to do this paving, and if so, did Mr. Andress approve and sanction this employment of Mr. Peters to do the work."

7. In overruling plaintiffs' offer to prove—

I. That Dr. Burgin, the defendant, waived his right to the notice required by the ordinance.

II. That he stated to the workman who was going on with the work that it was all right, to go ahead.

8. In overruling plaintiffs' offer to prove by John S. Rittenhouse, who was commissioner of highways at the time the work in question was done, "that after the expiration of the thirty days' notice to defendant, the highway department, by its commissioner, authorized and employed Mr. Peters to do this work, and the commissioner reported the same to the board of commissioners of highways, who approved of the same ;" and

9. In overruling plaintiffs' offer to prove "that each commissioner had a distinct district to which his duties were confined, and that the commissioner who made the contract with Mr. Peters had the district where this work was done at the time when this work was done."

*B. Woodward* and *George H. Vanzant*, for plaintiffs in error.

*Henry T. King*, for defendant.

The opinion of the court was delivered by

[City of Philadelphia *v*. Burgin.]

READ, J.—This is a *scire facias* on a claim filed in the name of the city against the defendant, for curbing and paving in front of his property on Orthodox street, Frankford. An ordinance or resolution of the 10th May 1858 authorized the highway department to notify the owners of property on this and other streets who have not curbed and paved their footways, to set their curb and grade and pave their footways in front of their respective properties, and in case they neglect or refuse to comply with their respective notices, the commissioner of highways is authorized to employ such parties on such portions of the work who will engage to do the same, and collect the proper costs from the respective owners.

· Upon the trial of the *scire facias* the city produced the ordinance or resolution and the claim or lien filed. By the 4th section of the Act of 11th March 1846, P. L. 111, " such claims may in suits thereon be read as evidence of the facts therein set forth," and by the preceding Act of 19th April 1843, P. L. 342, it was enacted that " it shall *only* be required to be proved by the said district (now city) to entitle them to recover on the same, that the said work was done or the materials furnished and the just value thereof—and upon such trial it shall *only* be lawful for the defendant to deny that the said work was done or materials furnished, or prove that the price charged therefor is greater than the value thereof, or that the amount claimed has been paid or released."

The only pleas were *non assumpsit*, payment with leave, &c., but no notice of special matter was given. Under the decisions of this court in The City of Philadelphia *v*. Wistar, 11 Casey 427, and Wistar *v*. City of Philadelphia, 18 Leg. Int. 348, I cannot understand how the defendant was permitted to call the chief commissioner of highways, who became so on the 18th or 19th of July 1859, to prove he gave no authority to pave Orthodox street, for the filing of the lien and the *scire facias* showed affirmatively that all the acts required to be done by them or their agents under the terms of the resolution had been complied with and ratified by the city. It would be singular, indeed, if under such a state of the pleadings, the defendant could be allowed to defeat the claim of the city, by producing its own officer to show that the work which the city has adopted was done without its consent. This was clearly a matter with which the defendant had nothing to do. This portion of the evidence of Jacob Shantz should therefore have been rejected. The remaining portion of the evidence on the part of the defendant was proper, as it tended to show the price charged therefor is greater than the value thereof.

This error of the court led to evidence in rebuttal on the part of the plaintiff, the city. So far as it concerned the defendant it was clearly shown that he had thirty days' notice, agreeably to the resolution. Supposing the question to be open to the defend-

14 WR.—35

[City of Philadelphia *v.* Burgin.]

ant to defeat the city, by showing there was no employment of Emanuel Peters to do the work, the court were in error in rejecting the offer to prove by McCarthy, chief commissioner of highways, that he employed him to do this paving, and also in refusing to allow the subsequent questions by the plaintiff to be put to the witness. We think also that the plaintiff should have been allowed to prove: 1st. That Dr. Burgin waived his right to a notice required by the ordinance; and 2d. That he had stated to the workman who was going on with the work that it was all right, to go ahead.

It is not necessary to examine the charge, as it proceeded upon what we think was a cardinal error, that the city was obliged to prove the employment of Peters, by direct and positive proof of a contract, when all his acts had been adopted and ratified by the city.

Judgment reversed, and a *venire de novo* awarded.