# Fell *versus* Philadelphia, to the use of Cunningham & McNichol.

1. By Act of April 21st 1855, no contract for new paving, &c., shall be binding on Philadelphia, "without an ordinance therefor." A majority of owners of property on a part of Becket street entered into an agreement with pavers to pave in front of their property, under direction, &c., of the commissioner of highways and agreed to pay for it; an ordinance was afterwards passed directing the commissioner to contract with a paver selected by a majority of the owners, &c., on that part of Becket street, the cost to be paid by them. The city entered into a contract accordingly. *Held*, that the contract was valid.

2. An ordinance provided for the mode, &c., of paving, and that the commissioner should certify on bills for paving that it had been done in a workmanlike manner, and that no property owner should be liable for paving unless done in accordance with the ordinance. The commissioner supervised the paving whilst in progress and approved it when finished. *Held*, to be sufficient without the certificate.

3. The Act of 1855, provided that no contract should be made by a head of department for new work unless it and sureties be approved by the city solicitor and councils. The bill for paving was certified by the surveyor and solicitor. *Held*, that the approval need not be endorsed, and the city joining as legal plaintiff, with the other acts, was a ratification of the act of the department.

4. The agreement of the lot-owners was for paving to a point east of Forty-third street, the ordinance authorized a contract to Forty-third street, the contract with the city was to pave to Forty-third street; paving was done to the point of the owners; between that and Forty-third street an Act of Assembly had previously forbidden streets to be opened and no paving had been done there. *Held*, that the contractors were entitled to be paid for the paving done.

5. In questions involving the liability of defendants for cost of municipal improvements, the relations between the city and those with whom the contract is made is outside the line of legitimate inquiry.

6. When the improvements are within what were the incorporated districts of Philadelphia on the 19th of April 1843, under the act of that date defendants can deny only that the work was done or materials furnished, or that the price was too great or had been paid.

7. An ordinance required before a paving contract should be awarded, that the person applying should give notice by advertisement, &c., two weeks before the application, of his name, the place and quantity of paving, the names and residences of the signers for his selection, with a request to lot-owners to meet the department at a time named to show cause why the contract should not be awarded, &c.; the agreement with owners was March 27th, for a cobble-stone pavement; there was no authority to lay any but a rubble pavement until June 21st, and the contract was June 24th; there was no evidence of advertisement. *Held*, that the want of advertisement was fatal.

8. "*Omnia præsumuntur rite esse acta,*" heals only apparent irregularities where jurisdiction is clearly vested.

9. The city could have waived irregularities and informalities; jurisdiction over the lot-owner could be obtained only under the rules prescribed by law.

10. Hutchison *v.* Pittsburg, 22 P. F. Smith 320; Philadelphia *v.* Burgin, 14 Wright 539; Philadelphia *v.* Edwards, 28 P. F. Smith 62; Pittsburg *v.* Walter, 19 P. F. Smith 365, referred to.

February 8th 1876.     Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

[Fell v. Philadelphia.)

Error to the District Court of *Philadelphia*: Of January Term 1874, No. 328.

This was an amicable scire facias sur municipal claim entered November 19th 1870, in which the city of Philadelphia, to the use of Michael Cunningham and David McNichol, was plaintiff, and William Jenks Fell, owner, &c., was defendant.

The claim was filed against Fell as owner of a lot on the south side of Kingsessing avenue, formerly Beckett street, and the west side of Forty-second street, in the Twenty-seventh ward, Philadelphia, for work and materials in paving and laying curb and gutter stone on Kingsessing avenue, in front of Fell's lot, the whole bill amounting to $1799.28, "the said paving having been duly petitioned for by a majority of the owners of property fronting on said Kingsessing avenue within the space or distance paved, which said petition was presented to the select and common councils of the city of Philadelphia, and thereupon the said councils, by resolution approved by the mayor of said city, did direct the said paving to be done, and authorized the contractor, who did the work and furnished the materials for the same, to collect and recover to his own use all claims arising and accruing thereon ; and the cost and expenses of the said paving, curb and gutter stone, measuring, &c., are herein duly assessed and charged at the just value thereof against the lot of ground and premises above described, agreeably to the several Acts of Assembly of the Commonwealth of Pennsylvania relating to municipal claims for paving," &c.

The defendant pleaded :—

1. Cunningham & McNichol, the contractors, were not selected according to law.

2. They were not selected by a majority of the owners of property fronting on Becket street, between Woodland street and Forty-third street.

3. The councils did not, by resolutions approved by the mayor, direct the said paving to be done, &c.

4. Beckett street was not paved from Woodland street to Forty-third street.

5. The paving was not done in accordance with the requirements of the law.

6. Non-assumpsit, payment and set off, with leave, &c.

The plaintiff replied to the fourth plea :—

"Beckett street was paved from Woodland street to a point four hundred and five feet west of Forty-second street, and along and in front of the premises of the said defendant. By force of an Act of the General Assembly of the Commonwealth of Pennsylvania, approved July 18th 1863, no street can be opened or continued across the tract of land over and through which the continuation of said Becket street would run from the said point to Forty-third street."

[Fell *v.* Philadelphia.]

He traversed all the other pleas.

By. Act of April 21st 1855, sec. 20 (Pamph. L. 269), it is enacted that no contract for new paving of streets, &c., "to be paid for by the city, shall become binding thereon without an ordinance therefor duly enacted," and if a contract be "for new work the contract and sureties shall be approved by the city solicitor and councils."

A city ordinance of August 30th 1858, provided for the mode of paving, the depth of gravel, &c., and further provided,

"That when the district surveyor shall have measured that portion of the paving chargeable to the property owners upon the line of any street, as aforesaid, and made out bills for the same, it shall be the duty of the chief commissioner of highways to certify on the said bills that the paving has been done in a workmanlike manner, and in conformity with the requirements of the above first section; and no owner of property shall be liable for paving of any street, lane or alley, unless done in accordance with the foregoing ordinance."

An ordinance of December 31st 1862, provided,

"That hereafter, before any contract for paving any street or streets shall be entered into by the highway department, the person or persons applying for such contract shall give notice of such application in two daily papers having the largest circulation, by three consecutive insertions, at least two weeks prior to the making of such application, such notice to set forth,

"1. The name of the contractor or contractors.

"2. The locality of the space or spaces intended to be paved, with the length of each space in linear feet.

"3. The name and residence of each person signing for contractor, together with the number of feet owned or represented by each person so signing fronting on said street or streets.

"4. To such notice shall be added an invitation to the owners of property on such street to meet at the department of highways, at a certain hour on a given day, to show cause, if any, why such contract should not be awarded to the applicant."

An Act of Assembly passed July 18th 1863 (Pamph. L. of 1864, p. 1113), recited, that a piece of land known as the Mayland Dam property, in the Twenty-fourth ward, containing about 25 acres, had been recently acquired with the intention of laying out a park at the expense of the owners, that the irregularities of the surface, &c., made the land unsuitable for building, and would prevent streets from being extended, according to the city plan, without great expense to the city. The act then provided: "that the owners might, within six months, file in the department of surveys a plan of the tract, declaring the time it was to be kept as a park, &c., and this plan should then be marked upon the established plan of survey of the proper district, &c., and thereupon so much of

[Fell *v.* Philadelphia.]

the plan of survey of the city as might be included in the limits of the tract should be suspended, and no street opened or continued across it whilst used as a park, without the consent of the owners."

By Act of March 17th 1864 (Pamph. L. 192), the owners of the above-mentioned park were incorporated as the "Hamilton Park Association."

The city ordinance of March 27th 1868, sect. 8, provided for the mode of grading a street that was to be paved and kind of material to be put into it, &c.

The ordinance of June 12th 1868, required the streets, &c., in West Philadelphia that should thereafter be paved, to "be laid with rubble pavement or material to be approved by the chief commissioner of highways," and described the mode of paving; and directed that the cost of streets newly paved should be equally divided amongst persons owning property fronting on them, proportional to the length of their fronts; rubble pavement not to exceed $1.50, and cobble not to exceed $1.25 per square yard.

On the 27th of March 1869 an agreement was made as follows :—

"We, the undersigned, owners of property on Beckett street or Kingsessing avenue, between Woodland street and a point four hundred and five feet west of Forty-second street, in the Twenty-seventh ward, in the city of Philadelphia, do hereby contract with Michael Cunningham and Daniel McNichol to do the paving in front of our respective properties on said street, the same to be done under the direction and to the satisfaction of the chief commissioner of highways, and we agree to pay them for the same the sum of one dollar and twenty-five cents per square yard."

The agreement was not signed by the defendant.

Appended to it was the following certificate :—

"The above agreement is signed by a majority of the property owners on Beckett street or Kingsessing avenue, between the points named.        JAMES MILLER, Surveyor."

By ordinance of April 13th 1869, the department of highways was "directed to enter into a contract with a competent paver, who shall be selected by a majority of the owners of property fronting on Beckett street, *from Woodland street to Forty-third street,* for the paving thereof, the conditions of which contract shall be that the contractors shall collect the cost of said paving from the property owners respectively." * * *

By ordinance of June 21st 1869, so much of the ordinance of "the 12th day of June, A. D. 1868, as relates to the paving of Woodland street from Chestnut to Forty-first street, and *Beckett street from Woodland street to Forty-third street,*" was repealed.

On the 24th of June 1869, a contract was made, to wit :—

"Whereas, the said Cunningham & McNichol have been selected

[Fell *v.* Philadelphia.]

by a majority of the owners of property on Beckett street, *from Forty-third street to Woodland street,* for the paving of said street, in accordance with resolution of councils, approved April 13th 1869. Now this agreement witnesseth, that the said Cunningham & McNichol, * * * hereby covenant and agree, to and with the city of Philadelphia, to pave Beckett street *from Forty-third street to Woodland street,* and the said Cunningham & McNichol further covenant and agree that they will comply with all the provisions of section third of ordinance approved March 27th 1868, * * *" said paving to be done in accordance with ordinances and resolutions regulating paving.

To this contract was appended the guaranty under seal of two sureties. There was nothing showing that the contract or sureties had been approved by the city solicitor; nor that the notice required by the ordinance of December 31st 1862 had been given.

By an Act of March 15th 1871 (Pamph. L. 361), it was enacted, that an act approved the 18th day of July 1863, "which supends the plan of surveys within the limits of a certain tract of land, then in the Twenty-fourth ward of the city of Philadelphia, known as the Mayland Dam property, and forbids the opening of streets through the same, be and the same is hereby repealed; and that so much of the established plan of survey of the city of Philadelphia as is embraced within the limits of the property dedicated under the provisions of the act hereby repealed may be revised by the board of surveys of said city, both as to streets and grades, and any alterations of the same shall be filed, returned to court, and confirmed in the manner now prescribed by law."

The case was tried, October 20th 1873, before Thayer, J.

Under objection and exception, the plaintiff gave in evidence the claim as filed; plaintiff offered in evidence the agreement of the property holders of March 27th 1869. The defendant objected to the offer because signed before the ordinance of April 13th 1869; because not the agreement contemplated by the ordinance, which was to select pavers for the whole distance between Woodland and Forty-third streets; the agreement offered was to pave only in front of the signers; the manner and kind of paving was changed by ordinance of June 21st 1869; the agreement was to pave to a point 405 feet west of Forty-second street, and not to Forty-third street, as required by the ordinance. The court admitted the offer, and sealed a bill of exceptions.

The plaintiff then gave evidence that the Hamilton Park began on the south side of Beckett street, 405 feet from Forty-second street, and Beckett street was paved on the south side 405 feet east of Forty-second street, a little more on the north side; Beckett street is not a thoroughfare; defendant's houses were built after the paving was done.

The agreement filed in the highway department by direction of

[Fell *v.* Philadelphia.]

the chief commissioner was given in evidence. Also, the bill to the plaintiff for the work, certified by the district surveyor and the city solicitor.

The plaintiff offered in evidence the contract of June 24th 1869 between the city and the claimants. The offer was objected to by the defendant because the Act of April 21st 1855 required the approval of such contracts by the city solicitor, and the ordinance of December 31st 1862 required that the contractor should advertise his proposals, &c. The court admitted the offer, and sealed a bill of exceptions.

The plaintiff closed.

The defendant gave in evidence the city ordinances heretofore stated.

The defendant testified that he had received no notice of the intention to pave, and knew nothing of the paving until it was done. He testified also that the work was not in accordance with the requirements of the ordinances, and gave evidence to the same effect by other witnesses.

In rebuttal, the commissioner of highways testified that the paving had been done in accordance with the ordinances and to his satisfaction. He testified as to examinations of the paving made in the presence and with the consent of the defendant and one of the contractors, tending to show that it had been properly done. There was other evidence that the work had been properly done.

There was no evidence that the bill for the work had been certified by the commissioner of highways, under the ordinance of August 30th 1858.

The defendant's points were:—

1. The plaintiffs to use, Cunningham and McNichol, were not selected as pavers, under the ordinance of December 31st 1862.

2. The plaintiffs must show that they were selected as pavers by the majority of the owners of property fronting on Beckett street, from Woodland avenue to Forty-third street.

3. The plaintiffs must show that they were selected by a majority of such property owners, in accordance with the ordinances of December 31st 1862 and April 13th 1869.

4. The ordinance of April 13th 1869 is consistent with and does not repeal the ordinance of December 31st 1862, and the selection must have been in accordance therewith.

5. The plaintiffs must show, before they are entitled to a verdict, that all the requirements of the ordinance of December 31st 1862 have been fully complied with by them.

6. The plaintiffs must show that they paved Beckett street from Woodland avenue to Forty-third street.

7. If plaintiffs did not pave Beckett street between the points named in the ordinance, viz., from Woodland avenue to Forty-third street, they cannot recover in this action.

[Fell *v.* Philadelphia.]

8. The highway department has no authority to enter into a contract on behalf of the city except under an ordinance of city councils (Act of 1855, sect. 20), and there was no authority given to enter into a contract for paving Beckett street to any point short of Forty-third street.

9. If the jury find that Beckett street has not been opened to Forty-third street, and that plaintiffs did not pave up to said street, they cannot recover in this action.

10. The plaintiffs must show that they fulfilled their contract in strict accordance with the terms of the ordinance then existing, or they cannot recover here.

11. The plaintiffs must show that the bills for the alleged work and labor done were made out and prepared in accordance with the ordinance of August 30th 1858, and in default thereof cannot recover here.

12. The plaintiffs cannot recover here under a contract not approved of by the city solicitor and councils.

The court charged:—

" * * * You will lay aside all objections but one in this case, because the others raise questions of law, of which the defendant can avail himself, but of which the court is the only judge. * * * All these questions I have reserved; they are exclusively for the court, and you may dismiss them.

" The one question of fact in the case for you is, whether this paving was done in accordance with the contract and in pursuance of the ordinance recited by the contract. Defendant says that the plaintiffs did not comply, because they did not place under the pavement the required amount of gravel and ashes; that this was improper, and not in accordance with the contract and ordinance. If that has been made out by the evidence, it is a full answer to plaintiff's claim, for the work was to be done in the manner prescribed by the ordinance and according to the contract; must have been a substantial compliance with them; neglect to put down the requisite ashes would prevent any recovery at all. Plaintiffs cannot recover but for full performance, and if not an entire performance cannot recover at all. This is, therefore, the only question: Was the work done in accordance with these requirements? Bear in mind, the requirements of this ordinance."

The judge then recapitulated the testimony and concluded:—

" This is the testimony on which you are to decide the case, and I leave it to you as a question of fact."

The verdict was for the plaintiff for $2245.16.

The court afterwards entered judgment on the verdict for the plaintiff on the points reserved, Thayer, J., delivering the opinion as follows:—

" By an ordinance of the city councils, approved April 13th 1869, the department of highways was authorized and directed

' to enter into a contract with a competent paver or pavers, who shall be selected by a majority of the owners of property fronting on Beckett street, *from Woodland street to Forty-third street, for the paving thereof*, the conditions of which contract shall be, that the contractor or contractors shall collect the cost of said paving from the property owners respectively, and shall also enter into an obligation with the city to keep the said street in good condition for three years after the paving is finished.' On the 24th June, the city, by the chief commissioner of highways, entered into a written contract with Cunningham & McNichol, the plaintiffs, to pave Beckett street, *from Forty-third to Woodland street.*

" On the trial it appeared that the plaintiffs had paved Beckett street from Woodland street *to a point four hundred and five feet west of Forty-second street.* It also appeared that the remaining distance between this point and Forty-third street was a part of the property of the Hamilton Park Association, a corporation incorporated by an Act, approved March 17th 1864 (Pamph. L. 1864, p. 192), and that it had not been paved in consequence of an Act of Assembly, approved July 18th 1863 (Pamph. L. 1864, Appendix, p. 1113), which enacted that no street should be opened or continued across or within the limits of said tract of land, during the period in which it should be held and used as a park, without the consent of the owners thereof.

" The defendant insisted that inasmuch as the ordinance of councils had only authorized the highway department to enter into a contract for the paving of the *whole* distance between Woodland street and Forty-third street, and inasmuch as the contractors had by the contract made with the city expressly undertaken to pave Beckett street the whole distance from Woodland street to Forty-third street, and in point of fact had paved only a part of the distance contracted for, they could not recover. This was the principal question of law in the case, and on the trial it was reserved. The commissioner of highways testified on the trial, that he had supervised the paving during its progress; that he had inspected it when finished; that it was done in accordance with law, and met his approval. It was quite plain upon the evidence that the city officials approved of the prosecution of the work as far as the point to which it was actually completed, and that there was an impossibility of prosecuting it beyond that point, in consequence of the prohibition of the statute, a circumstance which seems to have been overlooked at the time of the passage of the ordinance.

" Are the contractors, who appear to have acted in good faith, to go unpaid for the work actually done, because they did not perform that part of the contract which the law prevented them from performing, and in the non-performance of which the city, by the executive agents to whom the supervision of the matter was confided acquiesced? If the city councils, through ignorance of the

[Fell *v.* Philadelphia.]

restraining statute, authorize a contract too large in its terms, and thereby induced Cunningham & McNichol, through the same ignorance, to enter into it, and if Cunningham & McNichol performed the contract as far as it was lawful to perform it, are they now to be told that they have no right to be paid for the part which they performed, because the law prevented the performance of the residue? To affirm this would seem to affirm a manifest injustice. True, the ordinance required the whole distance to be paved, and the ordinance was the foundation of the agreement, the law of the contract, but it is a case in which *impotentia excusat legem*. If H. covenants to do a thing which is lawful, and an Act of Parliament comes in and hinders him from doing it, the covenant is repealed: 1 Salk. 198; Lord Anglesea *v.* Churchwardens of Rugley, 6 Q. B. (N. S.) 107, 114. But is the whole covenant repealed when it is capable of division, and one party performs it as far as it can legally be performed, and with the knowledge and approbation of the other party? We think not. In such a case the party cannot lawfully be deprived of his compensation for the part lawfully performed.

"But it is. said that the only authority which the highway department had over the subject was to procure the paving of Beckett street throughout the whole distance from Woodland street to Forty-third street, and that if the street could not be lawfully paved for the whole distance mentioned in the ordinance, the highway department had no authority to accept less, or to authorize the paving as far as it could be lawfully done. Corporate agents, and especially the agents of municipal corporations, are to be confined, doubtless, within the literal boundaries of the authority delegated to them. In general, this rule is to be rigidly enforced. It is one of the necessary defences against dishonesty and profligate administration of municipal affairs; and I may add, it is a rule which this court has always been strenuous to maintain, and which it would not willingly relax. It has no application, however, to the circumstances of this case, for here has been no unwarrantable departure from the letter of the authority. The city councils authorized their agents to have a work performed, which, up to a certain point, was altogether lawful, and beyond which the performance was prohibited by law. Was not this a good authority to the agent to have the work performed as far as it was lawful? Especially as the ordinance remained unrepealed, and stands to this day the evidence of sufficient authority for everything which could be lawfully done under it. It is to be observed, also, that the highway department, in the form of the contract, followed in good faith the very letter of the ordinance, and thereby fell into the same error which the councils themselves had committed; for the agreement which they prepared for the contractors and which they required them to sign bound them to

[Fell *v.* Philadelphia.]

pave the whole distance from Woodland street to Forty-third street. We can come to no other conclusion upon the evidence than that the parties to the contract acted in good faith. It seems to be highly probable that they were ignorant of the existence of the Act of July 18th 1863, which was a private act, and might therefore well be unknown to the parties, and which prohibited the opening of streets through the Hamilton Park grounds. And we are of opinion that the plaintiffs ought not to be prejudiced by this, but that inasmuch as they have performed the contract as far as it could be lawfully performed, the first point must be resolved in their favor.

" Several minor objections were urged by the defendant. The first was, that the terms of the ordinance which require the pavers to be selected by a majority of the owners of property fronting on Beckett street, from Woodland street to Forty-third street, were not complied with. It cannot be denied that the paper, dated March 27th 1870, agreeing that the paving should be done by the plaintiffs, was signed by a majority of the property holders on Beckett street, between Woodland street and Forty-third street. It is true that, in the paper referred to, they describe themselves as the owners of property on Beckett street, between Woodland street and a point four hundred and five feet west to Forty-second street, but it was in evidence that the ground throughout the whole remaining distance, that is, from the point indicated to Forty-third street, all belonging to one person, viz., the corporation known as the Hamilton Park Association, and counting in the association as an owner, it is quite clear that the signers of the paper were a majority of owners between Forty-second and Forty-third streets. This was one of the facts in issue, and was found by the jury in favor of the plaintiffs, and found upon sufficient evidence.

" It was also objected, that the paper signed by the majority of the owners was dated before the passage of the ordinance. We do not think this a tenable objection. It would be putting a very rigid construction upon the requirements of the ordinance to hold that a selection made immediately before the passage of the ordinance, and in anticipation of it, is void under its provisions, and is to prevent a recovery by the party who has done the work upon the faith of it, especially in view of the fact that the majority allowed their selection to remain in full force, making no other selection, and permitting the work to proceed in accordance with the selection so made, when they might have revoked it at any time before the awarding of the contract : Dickerson *v.* Peters, 21 P. F. Smith 53.

" It was further objected, that at the time when the ordinance authorized the paving of Beckett street was passed (April 13th 1869), and when the selection of the pavers was made by the

[Fell *v.* Philadelphia.]

majority of property owners, an ordinance then in force (that of June 12th 1868), requiring all streets which might be paved in West Philadelphia, where this paving was done, ' to be laid with rubble pavement, or material to be approved by the chief commissioner of highways, which shall be of stone, irregular in shape, with depth from six to nine inches and length five to twelve inches,' whereas this paving had been done with cobble-stones.  But the ordinance of June 12th 1868, was repealed, so far as it related to Beckett street, by another ordinance, passed June 21st 1869, which was before the execution of the contract between the plaintiffs and the city, the contract being dated June 24th 1869.  Now, the ordinance authorizing the paving did not require any particular kind of pavement to be laid.  Under it the commissioner was authorized to contract for any kind of pavement which might be in accordance with the city ordinances upon the subject, and at the time he made the contract for the city with the plaintiffs the cobble-stone pavement was in accordance with the existing ordinances upon the subject.   This is a sufficient answer to the objection that the kind of pavement required by law was changed subsequent to the passage of the ordinance authorizing the paving to be done.  So far as the objection rests upon the fact that the kind of paving authorized by the city ordinance was changed by another ordinance passed subsequent to the selection of the pavers, by the majority of the property owners, it is disposed of by the considerations already referred to.  The selection made by the owners was allowed to remain in full force and unrevoked, notwithstanding the commissioner had been released by the ordinance of June 21st 1869, from the restrictions contained in the ordinance of June 12th 1868.  It is argued that the property owners might have selected other pavers, if they had foreseen that cobble pavement was to be used instead of rubble pavement.  If so, then why did they not revoke their selection and make a new one before the city commissioner made the contract ?  They had plenty of time in which to do so, but they allowed their selection to stand, and there is no evidence whatever that they have ever objected to it, or have ever desired to be released from it, or have ever desired to depart from it or annul it, or that they now object to it.  The objection now made is not made by the majority of the property owners, but by the defendant alone, and there is no reason to believe that they approve or adopt his objection.  · The instrument which is the evidence of the selection made by the majority of the property owners, if it indicates anything in respect to kind of pavement to be used, plainly indicates that the cobble pavement was to be used, for the *price* fixed is the price for laying the cobble pavement, which, as is well known, is cheaper than the rubble pavement, and that is the price at which the city contracted with the plaintiffs, and for which the plaintiffs have obtained a verdict.  It would seem that the property

owners had anticipated the repeal of the ordinance of June 12th 1868, confining the commissioner to rubble pavements, otherwise they would not have fixed upon the price of cobble pavement. The ordinance was repealed on the 21st of June 1869, and the commissioner made the city contract with the plaintiffs on the 24th of June 1869.

"Finally, it is further objected by the defendant, that there was no evidence that the contract had been approved by the city solicitor, or that the plaintiffs had advertised their proposals. There was no evidence on either side upon the subject. In the absence of evidence to the contrary, the public officers are presumed to have done their duty in these respects; and *stabit praesumptio donec probetur in contrarium.* We are relieved, therefore, from considering the question, whether a non-compliance with these directions of the city ordinances would have imperilled the plaintiffs' contract.

"Judgment for the plaintiffs on the points reserved." ·

The defendant took a writ of error, and assigned for error,

1–3. The decisions of the court on questions of evidence.

4–15. Not affirming the defendant's points.

16–17. Entering judgment on the points reserved.

*V. Guillou* and *S. Dickson*, for plaintiffs in error.—It was essential to the right of plaintiffs to recover that they should show compliance with the terms of the city ordinances regulating paving: City *v.* Lea, 5 Phila. R. 77; Commissioners *v.* Keith, 2 Barr 218; City *v.* Edwards, 28 P. F. Smith 62; Philadelphia *v.* Reilly, 10 Id. 467; City *v.* Stewart, 1 Weekly Notes 242; Pittsburg *v.* Walter, 19 P. F. Smith 365.

At the date of the passage of the ordinance of April 30th 1869, the ordinance of June 12th 1868, prohibited the laying of any but "rubble" pavements in West Philadelphia. The ordinance was passed June 21st 1869, repealing so much of the general ordinance of 1868 as prevented Becket street from being paved with cobble stones, could not nearly three months after the passage of the ordinance of April 13th make the paper of March 25th proper evidence of a selection to lay the pavement authorized by the latter ordinance.

Under the requirements of the ordinance of December 31st 1862, the selection of pavers could have been legally made only in the manner expressly pointed out and directed by those requirements. The plaintiffs having failed in this other essential requisite of their case, the selection set up by them was of no validity as evidence of a compliance with the terms of the ordinance of 1869.

The omission of the advertisement was fatal. The owners of property could, at any time before the contract was finally awarded, rescind their first choice of a paver, take any one else for the purpose, and leave the first one without claim for the contract: Dick-

[Fell *v.* Philadelphia.]

erson *v.* Peters, 21 P. F. Smith 53. The ordinances are entirely consistent, and the latter does not repeal the earlier one in any way, and is as much part of it as though it were in it in words. All statutes in *pari materia* are to be read and construed together as if they formed parts of the same statute and were enacted at the same time : Potter's Dwarris on Statutes 145 ; 1 Kent Comm. 463 ; Rogers *v.* Bradshaw, 20 Johns. 735; McCartee *v.* Asylum, 9 Cowan 437 ; Rexford *v.* Knight, 15 Barb. 627 ; Smedley *v.* Erwin, 1. P. F. Smith 446. That which is implied in a statute is as much a part of it as what is expressed : Dwarris on Statutes 145 ; U. S. *v.* Babbitt, 1 Black 61 ; Gelpecke *v.* City, 1 Wall. 221. To repeal a statute by implication there must be such a positive repugnancy between the provisions of the new law and the old that they cannot stand together or be consistently reconciled : Dwarris on Statutes 155 ; Cool *v.* Smith, 1 Black 459 ; Brown *v.* Commissioners, 9 Harris 37 ; Street *v.* Commonwealth, 6 W. & S. 209.

The bill for the paving is not in accordance with the positive requirements of the ordinance of August 30th 1868. The certificate of the chief commissioner made a pre-requisite to recovery upon the bill is not affixed to that rendered defendant, and, therefore, under the provisions of the ordinance, the defendant is not liable for such paving. The Act of Assembly of 1855 forbids the head of any department of the city entering into any contract for new work unless the contract and the sureties offered are approved by the city solicitor and councils. The contract of plaintiffs with the highway department to lay the pavement on Becket street, from Woodland avenue to Forty-third street, being in contravention of the statute of July 18th 1863, was void : Collins *v.* Blantern, 1 Smith Lead. Cas. 621 and note ; Mitchell *v.* Smith, 1 Binn. 110 ; Seidenbender *v.* Charles, 4 S. & R. 151 ; Maybin *v.* Coulon, 4 Dall. 298 ; Biddis *v.* James, 6 Binn. 321 ; Burkholder *v.* Beetem, 15 P. F. Smith 496. The contract of plaintiffs, was to lay a pavement upon a portion of the grounds belonging to the Hamilton Park Association, directly in contravention of the Act of 1863, of which they were bound to take notice, and which expressly prohibited any such interference. This was an entire contract, and as such nothing but a complete performance would be satisfaction of its terms or intention : 2 Parsons on Contracts 517. In actions on entire contracts, entire performance must be alleged and followed by proof, showing complete performance or dispensation therewith, by the party entitled to the performance : Preston *v.* Finney, 2 W. & S. 53 ; Miller *v.* Phillips, 7 Casey 218 ; Wright *v.* Cumpsty, 5 Wright 111 ; Shaw *v.* Turnpike Co., 2 Penna. R. 454 ; Martin *v.* Schoenberger, 8 W. & S. 367 ; Harris *v.* Liggett, 1 Id. 301 ; Demott *v.* Jones, 2 Wall. 1 ; McClurg *v.* Price, 9 P. F. Smith 420. If the Act of Assembly of 1863, excused the plaintiffs from compliance with contract in its entirety, the contract

[Fell *v.* Philadelphia.]

would not have been absolutely discharged, but only suspended during the time the law rendered it impossible to go on. And on the repeal of that restraining statute the covenant would be still in existence; 2 Parsons on Contracts 675; Baylets *v.* Fettyplace, 7 Mass. 325; Hadley *v.* Clarke, 8 T. R. 259.

*H. M. Dechert* (with whom was *W. H. Lex*), for defendants in error.—The verdict shows a compliance by the defendants in error with the terms of the city ordinances regulating paving. The ordinance authorizing the paving is to be construed liberally; the agreement was evidently signed in anticipation of its passage, and it was effectually continued and ratified by the majority of the property owners, who allowed it to remain in full force, although they could have recalled it and revoked the selection at any time prior to the making of the written contract with the city: Dickerson *v.* Peters, 21 P. F. Smith 55. The provisions of the ordinance of Dec. 31st 1862 are merely directory. The contract with the city was complete in itself, and the contractors could reasonably presume that the public officers had done their duty in the premises. The *onus* of showing the contrary rested upon the defendant. Under the terms of the ordinance authorizing this paving, and of the Acts of Assembly, the city ratifies everything in relation to the contract, except the selection of the paver by the property owners, and the character of the work when done: Philadelphia *v.* Burgin, 14 Wright 539; Philadelphia *v.* Reilly, 10 P. F. Smith 467; Philadelphia *v.* Wistar, 11 Casey 431. One of the parties to a contract may waive any of its provisions, and if he does so, and the other party assents, a new contract will arise equally binding with the first. The estoppel relied on by the defendant does not arise, because the agreement was not made with him, but with the City of Philadelphia, and might therefore be controlled by councils: Philadelphia *v.* Arrott, 8 Phila. Rep. 41. The Act of July 18th 1863, was a private act, concerning the particular interests and benefits of certain owners of a tract of land. The claimants being strangers, were not bound by it, and its existence could not deprive them of their interests: Dwarris on Statutes 53–56; Lucy *v.* Levington, 1 Ventris 175; Kent's Com. 425; Biddis *v.* James, 6 Binn. 321. Where a contract is made impossible of execution, equity will relieve: Morse *v.* O'Reilly, 6 Penna. L. J. 501. This was a severable contract. Where the price to be paid is clearly apportioned to different parts of what is to be performed, the contract is severable, although the work to be performed is in its nature single and entire: 2 Parsons on Contracts 31; Cunningham *v.* Morrell, 10 Johns. 203; Oil Co. *v.* Brewer, 16 P. F. Smith 355; Story on Contracts 13. The term ordinance is usually applied to the laws of a corporation, as distinguished from the acts of the legislature; 2 Bouvier Law Dict. 269: they are subordinate to the control of

[Fell *v.* Philadelphia.]

the legislature of the state: 2 Kent Com. 275; Philadelphia *v.* Fox, 14 P. F. Smith 180; Southwark Railroad *v.* Philadelphia, 11 Wright 324; Butler's Appeal, 23 P. F. Smith 448.

Mr. Justice WOODWARD delivered the opinion of the court, May 8th 1876.

An agreement was entered into on the 27th of March 1869, between a majority of the owners of property on the portion of Becket street which was intended to be improved, and Michael Cunningham and Daniel McNichol, for paving that street from its intersection with Woodland street to a point four hundred and five feet west of Forty-second street, in the twenty-seventh ward of Philadelphia. It was stipulated that the work was to be done "under the direction and to the satisfaction of the chief commissioner of highways," and was to be paid for at the rate of one dollar and twenty-five cents per square yard. When the agreement was executed this work had not been authorized by the city councils. On the 13th of April 1869, an ordinance was passed directing the department of highways "to enter into a contract with a competent paver or pavers, selected by a majority of the owners of property fronting on Becket street from Woodland street to Forty-third street, for the paving thereof," and providing, as one of the conditions of the contract, that the cost of the work should be collected from the respective property owners by the contractor or contractors. An ordinance of the 12th of June 1868, requiring the streets of West Philadelphia to be laid with rubble pavement only, was in force at the date of the agreement of the property owners with Cunningham and McNichol. And the same ordinance fixed the sum of one dollar and fifty cents per square yard as the charge for rubble pavement; and the sum of one dollar and twenty-five cents per square yard as the charge for cobble pavement. On the 21st of June 1869, so much of the ordinance of the 12th of June 1868, as related to Becket street from Woodland to Forty-third street, in the Twenty-seventh ward, was repealed. And on the 24th of June 1869, a contract was executed by Cunningham and McNichol "to pave Becket street from Forty-third street to Woodland street," in accordance with "all the provisions of section third of the ordinance approved March 27th 1868." Under this contract the work contemplated by the agreement of the 27th of March 1869, was done. That is, Becket street was paved from Woodland street to a point four hundred and five feet west of Forty-second street. It was shown on the trial that performance of the stipulation to pave the part of the street between the point last named and Forty-third street was impossible, because, under the provisions of the two Acts of Assembly, passed respectively on the 18th of July 1863 and the 17th of March 1864, the lands of the Hamilton Park Association extended to that point, and the

opening of streets on those lands while they should be used for park purposes was forbidden. The fact that the work was satisfactorily done by the contractors was established by the verdict of the jury.

Various questions growing out of alleged irregularities in the proceedings, which resulted in the execution of the contract, were raised on the trial in the District Court. Many of these related to formal omissions of acts prescribed by statute or ordinance, on the part of the city officers. It was complained, for instance, that the certificate of the commissioner was not affixed to the bill which was rendered when the work was completed, according to the provisions of the ordinance of the 30th of August 1868. But the commissioner testified that he had supervised the paving during its progress, and had inspected and approved of it when finished. The omission of the approval of the sureties in the contract by the city solicitor, as required by the twentieth section of the Act of the 21st of April 1855, was also made ground for complaint. But such approval is not directed to be endorsed, and the fact that the bill was certified by the surveyor and solicitor, would imply in this action, in which the city has joined as the legal plaintiff, a ratification by the proper authorities of the action of the highway department. The existence of the Hamilton Park Acts of 1863 and 1864 was overlooked when the ordinance of the 13th of April 1869, was passed, and when the contract for the paving was subsequently executed. The work of the contractors was stopped at the line of the property of the Park Association by the express provisions of a statute. They did all that they could lawfully do under the contract with the city, and they executed literally the agreement they had made with the property owners on Becket street. Rules in cases of this kind could easily be made so rigid as to work injustice. In questions involving the liability of defendants for their proportions of the cost of municipal improvements, the relations between the city and the parties with whom they contract are ordinarily outside the line of legitimate inquiry. When such improvements are within what were the incorporated districts of the county of Philadelphia when the Act of the 19th of April 1843 was passed, a defendant can "only deny that the work was done, or the materials furnished, or prove that the price charged was greater than their value, or that the amount claimed has been paid or released." Notwithstanding the doubt intimated by Mr. Justice WILLIAMS in Philadelphia *v.* Edwards, 28 P. F. Smith 62, that act has constantly been recognised by this court to be in force. It was recognised in the Philadelphia *v.* Burgin, 14 Wright 539, and has been expressly followed down to the decision in Philadelphia *v.* Brooke, in February last, *antea*, p. 23. Indeed the terms of the forty-fourth section of the Consolidation Act of February 2d 1854, scarcely leaves the question open to debate. Those terms

[Fell *v.* Philadelphia.]

are : "All acts of the legislature not inconsistent with this act, now in force, shall continue in operation within the limits of the county, city, district, borough or township in which they are now operative, under the authority of the city councils, courts and officers created by this act, or permitted to continue as consistent therewith, until such acts shall be altered or repealed by the legislature : Provided, That the city councils shall have power, by ordinance, to extend the operation of laws now in force within the city, police or municipal districts, to other parts, or over the whole of the enlarged limits, and to declare what laws have become obsolete by this act, or by the extension as aforesaid of other laws." It has been uniformly held, that it is not competent for a defendant to raise questions relating to the formal details of agreements between the city and its contractors, and to their execution and performance, where the acts of the municipal officers have been ratified, and the work done by the contractors has been accepted : Philadelphia *v.* Wistar, 11 Casey 427 ; Philadelphia *v.* Burgin, *supra ;* and Hutchinson *v.* Pittsburg, 22 P. F. Smith 320.

Other deficiencies, however, are developed in this record which have more significance. The ordinance of the 31st of December 1862, is in these words : " Hereafter, before any contract for paving any street or streets, shall be entered into by the highway department, the person or persons applying for such contract shall give notice of such application in two daily papers having the largest circulation by three consecutive insertions, at least two weeks prior to the making of such application, such notice to set forth : 1. The name of the contractor or contractors ; 2. The locality of the space or spaces intended to be paved, with the length of each space in linear feet ; 3. The name and residence of each person signing for contractor, together with the number of feet owned or represented by each person so signing fronting on said street or streets ; 4. To such notice shall be added an invitation to the owners of property to meet at the department of highways, at a certain hour on a given day, to show cause, if any, why such contract should not be awarded to the applicant." No evidence was given by either party on the trial on the subject of notice by these contractors. If the proceeding had been in other respects regular, the plaintiffs could rest on the presumption that the municipal officers had performed the duties imposed by law upon them. But while the contractors held the agreement of the 27th of March 1869, and while the ordinance authorizing the paving of Becket street had been passed on the 13th of April 1869, yet the agreement stipulated for the cost of a cobble pavement, and no power to lay any other than a rubble pavement in West Philadelphia was conferred by councils until the 21st of June 1869. The contract was made on the 24th of June 1869. There was thus an interval of just three days between the grant of authority to lay a

[Fell *v.* Philadelphia.]

cobble pavement and the execution of the contract in pursuance of the grant. Of course two weeks' notice of the application of the contractors for the work that was actually done was physically impossible. Let it be presumed that *some* notice was published, as required by the ordinance of 1862. If it described the work as a cobble pavement, the defendant was not bound by it, for such a pavement was prohibited by the ordinance of the 12th of June 1868. If the notice described the work as a rubble pavement, the defendant could not be required to pay for that which was actually laid, for that was a cobble pavement. The facts prove affirmatively that the legal requisites of such a contract between the city and the contractors, as would create an obligation on the defendant to pay, were not fulfilled. There is no room for the application of the maxim *omnia præsumuntur rite esse acta,* for that principle heals only apparent irregularities or omissions, where jurisdiction or power over the subject-matter is clearly vested : SHARSWOOD, J., in Pittsburg *v.* Walter, 19 P. F. Smith 365. The irregularities here upturn the very foundation of the jurisdiction.

In view of the good faith in which the contract was entered into, and with which the work has been done by the contractors, it has been with reluctance that this conclusion has been reached. But this is not a question between the city and the contractors, nor between the contractors and the property owners who employed them. It arises between the city and the defendant. The latter had assumed no duty expressly or by implication. He can be made subject to a legal obligation only where the power conferred on the municipal authorities has been legally exercised. Like The City *v.* Lea, 5 Phila. R. 77, this is " a case depending wholly on the forms and requisitions of law, and in no degree on consent or contract, in which one of the forms, one of the conditions which the law itself has imposed, is wholly wanting." It is within the principle of the Philadelphia *v.* Reilly, 10 P. F. Smith 467 ; of the City *v.* Stewart, 1 Weekly Notes 242, and of Pittsburg *v.* Walter, *supra.* The city could have waived irregularities and defects of form. The property owners who entered into the agreement with the contractors, by leaving the authority they had conferred unrevoked, could not make those irregularities and defects subjects of complaint. But jurisdiction over the defendant and his property could be obtained only by pursuing rules prescribed by law, and the record proves that these rules could not possibly have been observed.                              The judgment is reversed.

And now, to wit, 22d May 1876, it is ordered that in addition to the judgment of reversal, entered on the 8th inst., judgment be entered in favor of the defendant on the points reserved.