## PHILADELPHIA, TO USE, v. WILSON JEWELL.

135    329
140    10

135      329
36 SC 4573
36 SC 4574

APPEAL BY USE PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

135      329
37SC 4369
e38SC 4543

Argued April 9, 1890—Decided May 26, 1890.
[To be reported.]

1. The provisions of a municipal ordinance, directing that all contracts for street paving should contain a condition that the work should be completed in two years or the contract should become void, must be considered as written into a paving contract in which the time for completing the work is left blank, but which expressly stipulates that it shall be executed in accordance with all the city ordinances relating to paving.

2. Such a contract, made by the city of Philadelphia in 1873, under which a part of the work was done in that year, but nothing further was done until 1879, became voidable by the city in 1875, but was revived by ordinance of December 3, 1878, ratifying and approving "all contracts for paving streets . . . . . under which work has been done under resolution or ordinance authorizing the same:" Philadelphia v.·Hays, 93 Pa. 72; Pepper v. Philadelphia, 114 Pa. 96.

(*a*) The price named in the contract of 1873 was $1.50 per yard, then a legal rate, and the contractor was required by the contract to receive assessment bills against the property, in payment for the work done by him thereunder. On April 24, 1877, while said contract was dormant, the councils, in pursuance of the act of March 30, 1866, P. L. 354, enacted an ordinance fixing the price for all new paving at $1.10 per yard.

Case Stated.

3. The revival of the contract in 1878 being an act of grace, the contractor must accept it subject to such terms as were imposed, and by reasonable implication the reviving ordinance imposed the condition that the price of work to be done thereafter should be that fixed by the ordinance of 1877; at all events, the city could not then impose upon property owners a higher rate than could have been imposed by a new contract.

4. The right of the city to order the paving of its streets, to determine the kind of pavement, the manner of its doing, the terms of the contract, etc., is independent of the property owner's consent; but, when the latter has had certain rights conceded to him, either by statute or by municipal ordinance, he may assert them against the city itself, as well as against the contractor to whose use the city sues.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 219 January Term 1890, Sup. Ct.; court below, No. 18 March Term 1880, M. L. D., C. P. No. 2.

To the number and term in the court below, the city of Philadelphia, to the use of Jacob M. Peters, brought scire facias against the "estate of Wilson Jewell, deceased," and others, upon a municipal claim for paving a part of Penn street. On May 23, 1889, the plaintiff and defendants agreed upon the following facts as a case stated:

By an ordinance of the city of Philadelphia, duly approved on June 12, 1868, the price of rubble paving in said city was fixed at $1.50 per square yard.

In and by a certain resolution of said councils, duly approved on February 24, 1871, it was provided as follows:

"That the department of highways be and is hereby authorized and directed to enter into a contract with a competent paver or pavers who shall be selected by a majority of the owners of property fronting on Penn street, from Sellers street to Unity street, the cost of paving the intersection not to exceed the sum of $135, for the paving thereof with rubble paving: the conditions of said contract shall be that the contractor or contractors shall collect the cost of said paving from the property owners respectively fronting thereon, and shall enter into an obligation with the city to keep the said paving in good repair for three years after the paving is finished."

In and by a certain other ordinance of said city councils, duly approved on May 11, 1872, it was provided as follows:

### Case Stated.

" That from and after the passage of this ordinance, all contracts for grading, paving or repairing of the streets, avenues, or roads in said city, entered into by the department of highways with any person or persons, shall contain the following covenant and condition, viz.: That the said work shall be fully completed to the satisfaction of the department of highways, on or before the expiration of two years from the date thereof; provided, that the water pipes are laid on such streets, avenues or roads; otherwise, the limitation to continue from the date of the completion of the laying of water pipes, and in default thereof, this contract shall be considered null and void."

In and by a certain other resolution of said councils, duly approved on June 13, 1873, the chief commissioner of highways of said city was duly authorized, instructed and directed to enter into a contract on behalf of said city with Jacob M. Peters, for the paving of Penn street, from Unity street to Sellers street, in accordance with the resolution approved February 24, 1871, entitled a " Resolution to authorize the paving of Penn street and other streets with rubble pavement."

Under and in pursuance of said resolution, said chief commissioner of highways did, on July 2, 1873, on behalf of said city, duly enter into a written contract with said Jacob M. Peters for the paving of said Penn street, from Unity to Sellers street, with rubble paving, wherein it was stipulated and agreed on behalf of said city, that it should pay said Peters for said paving, the sum of $1.50 per square yard for each and every square yard thereof in " assessment bills," made out by the proper officers, at the rate of $1.50 for each and every square yard of said pavement laid in pursuance of said contract. And said Jacob M. Peters therein agreed on his behalf to do said paving for the price of $1.50 per square yard, and to accept and take from said city, in payment therefor, assessment bills made out as aforesaid, at the rate of $1.50 for each and every square yard thereof, prout contract, which is made a part of this case stated as fully as if entirely and particularly set forth herein. In the latter part of the year 1873, the said Jacob M. Peters, under said contract, paved a part of said Penn street, between the points aforesaid, with rubble pavement, and received from said city in payment therefor assess-

Case Stated.

ment bills, made out as aforesaid, at the rate of $1.50 per square yard for each and every square yard thereof then done by him.

In and by a certain other ordinance of said councils, duly approved April 24, 1877, it was provided: " That from and after the passage of this ordinance the price or cost for the new paving of the cartways of streets to be charged to the owners of property fronting on such streets, and to the city for intersections, shall not exceed the following, viz.: for paving with cobble stone $1 per square yard; for paving with rubble stone, $1.10 per yard; but, should the bills for such paving remain unsettled and unpaid sixty days after they are legally rendered, there shall be added to the above prices the sum of ten per cent for each square yard paved."

In and by a certain other ordinance of said councils, duly approved January 26, 1878, entitled " An ordinance to put in force and practice a certain ordinance voiding contracts," it was provided: " That all contracts for grading or paving of streets made for two years or more, and the work remaining uncompleted on January 1, 1878, the said contracts are hereby declared void and of no effect, in accordance with an ordinance entitled ' An Ordinance relative to the completion of contracts for the grading, paving or repairing of streets,' approved May 11, 1872; and that the chief commissioner of highways be and is hereby instructed to notify the contractors in interest not to continue the work on said contracts, and that the city controller be instructed to countersign no warrants for work done under such contracts after the above mentioned date."

No notice to the contractor in interest was given, as required by the last above mentioned ordinance.

In and by a certain other ordinance of said councils, duly approved December 3, 1878, it was provided : " That an ordinance entitled an ordinance in relation to contracts for street paving, approved December 31, 1862, be and the same is hereby repealed ; and all contracts for paving streets entered into by the department of highways, under which work has been done under resolution or ordinance authorizing the same, be and are hereby ratified and approved."

In the latter part of September, 1879, the said Jacob M.

Peters, under the above mentioned contract, did the work and paving particularly set forth in the claim filed in this case, and which claim is made a part of the case stated, and received from said city in payment therefor an assessment bill against the property described in said claim, made out by the proper officers, at the rate of $1.50 for each and every square yard of said paving.

No part of said claim or assessment bill has ever been paid, and the whole thereof still remains unpaid. Said claim was duly filed March 2, 1880. The water pipe was laid in Penn street, between Unity and Sellers streets, in the year 1871.

If upon these facts above stated, the court should be of the opinion that said Jacob M. Peters is entitled and has a legal right to demand and claim for said paving at the rate $1.50 per square yard, then judgment to be entered for the plaintiff for the sum of $32.59, with interest from September 23, 1879; but if the court should be of opinion that the said Jacob M. Peters has a legal right to but $1.10 per square yard, for said paving, then judgment to be entered for the plaintiff, for the sum of $23.98, with interest from September 23, 1879; but if the court should be of opinion that the said Jacob M. Peters, has no legal claim and is entitled to nothing, then judgment to be entered for the defendants, either party to have the right to a writ of error to the Supreme Court.

After argument, the court in banc, on December 28, 1889, without opinion filed, entered judgment for the plaintiff upon the case stated for $38.79, the amount for which it was rendered being calculated upon the basis of $1.10 per square yard for the work done. Thereupon the use plaintiff took this appeal, specifying that the court erred:

1. In not entering judgment for the plaintiff, on the case stated, for $32.59, with interest from September 23, 1879.

*Mr. Byron Woodward* (with him *Mr. William Hopple, Jr.*), for the appellant:

1. The court had no right to disregard the solemn contract and say that Peters should take less for his work than he had agreed to do it for, and less than the amount which the city, in recognition of its obligation, had paid him in assessment

Arguments.

bills. The only contract was a clear and plain one for $1.50 per square yard. While courts may construe contracts when their meaning is obscure, they cannot make new contracts for the parties, and there is no room for construction when the language used is clear and unambiguous: Shafer v. Senseman, 125 Pa. 310. This is the law between the parties to the contract, and in such a case as this the property owner has no superior rights; on the contrary, he has nothing to do with the contract made by the city, if authority for making it existed: Reilly v. Philadelphia, 60 Pa. 467; Hutchinson v. Pittsburgh, 72 Pa. 320; Philadelphia v. Brooke, 81 Pa. 23; Fell v. Philadelphia, 81 Pa. 58; Philadelphia v. Hays, 93 Pa. 72; Philadelphia v. Wistar, 35 Pa. 427. The defendants, of course, had a right to know what the price fixed in the contract was, and to see that the assessment bills conformed thereto, but that was the extent of their rights.

2. It is contended that Peters is bound by the ordinance of 1877, fixing the price for new rubble pavement at not exceeding $1.10 per square yard. But, in the first place, there is nothing in the ordinance indicating an intention to change the terms of existing contracts, or contracts previously made; and, secondly, councils had no power to make any such change, for it would be impairing the obligation of a contract. Corporations have no more power in this respect than natural persons: Duncombs v. Fort Dodge, 38 Ia. 283. The ordinance of January 26, 1878, did not avoid the contract with Peters. No time for the completion of the work was fixed in it, and therefore the councils had no power to declare it void, especially without first giving him reasonable notice to proceed and complete the work. But, even if the city had a right to repudiate the contract, the right was personal to itself and could not be taken advantage of by the defendants who were strangers to the contract: Philadelphia v. Brooke, 81 Pa. 23.

3. The city never refused to recognize the contract. It never notified Peters not to go on with his work. When it was completed, the city accepted it and had assessment bills made out at $1.50 per square yard, with which it paid him; it filed municipal claims for their amounts, and now it unites with him in suing for their recovery. Such acts clearly estop the property owner from questioning the existence of the con-

Arguments.

tract : Philadelphia v. Brooke, supra. But the whole question is settled by the ordinance of December 3, 1878, ratifying contracts under which work had been done. The contract with Peters came directly within its terms, and the ratification bound both the city and the property owners : Philadelphia v. Hays, 93 Pa. 72; Pepper v. Philadelphia, 114 Pa. 96. Upon the faith of this ordinance Peters went on and completed his contract. The case stated admits that he did the work under a contract providing for the payment of $1.50 per square yard. As that contract, if it could have been declared void, was duly ratified, we cannot imagine why the court entered judgment for less than the amount called for both by it and by our assessment bill.

*Mr. R. D. Maxwell* (with him *Mr. Joseph Ball* and *Mr. Victor Guillou*), for the appellees :

While the controversy in this appeal relates simply to the price the plaintiff is entitled to charge, we have also taken an appeal, which raises the question of the right of the plaintiff to recover at all, but which cannot, according to the rules of this court, be argued at the present term. We suggest that the appeal of the plaintiff should not be heard until that of the defendants is ripe for argument, so that the whole case can be disposed of finally. If the plaintiff has a right to be heard now, we present the .following positions as to the questions raised by the present appeal :

1. The power to fix the price or cost of paving, as was done by the ordinance of 1877, was conferred by the act of March 30, 1866, P. L. 354, and was recognized in Philadelphia v. Miller, 2 W. N. 302. Peters, and all the world beside, having notice of that ordinance, at the time he took up and went on with the work of paving Penn street, of his own motion, how can he, or the city, in the face of that ordinance, charge more than $1.10 per square yard against property owners for work done after its passage ? The property owners have some rights under the ordinance. Even under the acts of assembly they can defend on the ground that the work was charged to them at more than its worth : § 1, act of April 19, 1843, P. L. 342 ; Philadelphia v. Burgin, 50 Pa. 539 ; Philadelphia v. Brooke, 81 Pa. 23 ; Fell

Arguments.

v. Philadelphia, 81 Pa. 58; Pepper v. Philadelphia, 114 Pa. 96. The plaintiff cannot escape from the market price fixed by the ordinance of 1877.

2. The claim of the use plaintiff that because he had a contract made in 1873, stipulating for a certain rate, then the market one, he could sit down and wait until, by the decline of market prices to their lowest point, the time for his greatest profit had arrived, and then do the work and charge the owner of the property at the old rate which had become illegal, carries its own answer in a court of justice and equity. The rate specified in the contract was lawful, and perhaps fair, in 1873, when, as is well known prices were at the highest point, but it was a grossly exaggerated one six years later, when the work was actually done. No tribunal will compel a man to pay for work, undertaken without his consent, more than the market rate fixed by the creditor, especially in the circumstances of this case. Had Peters done his work when he contracted to do it, his rates could not have been questioned by the defendants; but they surely have the right now, after the years of delay in doing the work.

3. That the chief commissioner of highways sent Peters assessment bills for the work done in 1879, made out at the old rate of 1873 and not at the price fixed by law when the work was done, is no reason why the defendants should be compelled to pay a much larger sum than their neighbors for the same kind of work done by the same people, at the same time. Such action was a purely ministerial act. Councils alone had the power to ratify. Public agents have no such power, unless it is conferred upon them by statute or ordinance: Reilly v. Philadelphia, 60 Pa. 467; Philadelphia v. Railroad Co., 88 Pa. 314; Elliott N. Bank v. Railroad Co., 2 Lea. B. J. 676; Floyd Acceptances, 74 U. S. 666; Anthony v. Jasper, 101 U. S. 693; Louisiana v. Wood, 102 U. S. 294; Murphy v. Louisville, 9 Bush 189; Cooper v. Lampeter Tp., 8 W. 125; Market Co. v. Jackson, 102 Pa. 269. It is alleged that the contract was resurrected and revived by the ordinance of December 3, 1878. We deny that this ordinance had such effect, but if the contract was so revived, it was at the then market rates fixed by law, and no other.

OPINION,* MR. JUSTICE MITCHELL:

The contract between Peters and the city of Philadelphia contained no stipulation as to the time within which the paving was to be completed, the space left for that purpose in the printed form of the contract not having been filled in. But when the contract was made the ordinance of May 11, 1872, was in force, which provided that all contracts for paving should contain a condition that the work should be completed in two years from their date, and in default thereof the contract should be void: Ord. 1872, p. 199. This ordinance was part of the city law, and in his agreement the contractor expressly stipulated to execute and finish his work in accordance with all the ordinances of the city relating to paving. The stipulation to finish the work within two years from the date, must therefore be considered as written into the contract. The work was not finished in two years, and therefore the contract became void in July, 1875. It appears by the case stated that part of Penn street was paved in 1873, and nothing further was then done under the contract until 1879. The city, of course, might have treated the contract as void, and refused it further recognition; but, on December 3, 1878, an ordinance was passed entitled "An ordinance to repeal an ordinance in relation to contracts for street paving," which repealed an ordinance of December 31, 1862, and then proceeded: "And all contracts for paving streets entered into by the department of highways, under which work has been done under resolution or ordinance authorizing the same, be and are hereby ratified and approved:" Ord. 1878, p. 213. The ordinance of 1862, thus repealed, provided only for the publication of notice, by the applicants for contracts to pave, of the time and place where property owners might appear and object, and had no relation to the time of completion of the work: Ord. 1862, p. 487. If the question were distinctly raised here, and were new, we might find some difficulty in holding this ordinance of December 3, 1878, applicable to contracts made void by the ordinance of 1872, which has reference to an entirely different subject-

* It should be stated, to prevent confusion, that the opinion in this case, printed in 26 W. N. 150 and in 19 Atl. R. 947, was subsequently modified as printed in this report.

matter from that of 1862. But the ordinance has been before this Court twice, and though this point was not expressly raised, yet the construction of the ordinance as a general ratification of all forfeited contracts for paving, which come within the description, has been sanctioned and ought not now to be disturbed : See Philadelphia v. Hays, 93 Pa. 72, and Pepper v. Philadelphia, 114 Pa. 96. It may be taken as settled, therefore, that the contract with Peters was revived and ratified by the city in its ordinance of December 3, 1878, and that the work done by Peters subsequently was done under the contract.

In the interval, however, from 1875 to 1878, while the contract was void, or at least dormant, the ordinance of April 24, 1877; Ord, 1877, p. 59, was passed, fixing the price of rubble pavement for all new paving after the passage of the ordinance at $1.10 per square yard. The price in Peters' contract of 1873 was $1.50 per square yard.

It is beyond question that, in reviving and ratifying the contract, the city might have made an express condition that the work thereafter to be done under it should be done at the reduced price. Appellant's counsel has argued strenuously against the power of the city to change the terms of contracts once made, and also against the power of courts to introduce new terms by construction. All this is fully conceded, but the argument overlooks the fact that the appellant's contract had become void by his own default, and if it was revived as an act of grace by the city he must accept the revival upon such terms as the city imposed. The city, however, made no express conditions, and we have therefore to consider the effect of the omission to do so, and also the effect of the ordinance of 1877 upon the rights of the appellees.

Actions by a municipal corporation to the use of a contractor who has done the work, against the owner of property charged with the payment for it, are a species of tripartite contests, unknown to the common law, and presenting some difficulties in procedure under its forms. The general rule, even in Pennsylvania where equity is part of the common law, undoubtedly is that the rights of the legal plaintiff only can be regarded and must prevail, but the rule has as many exceptions as the principles of equity require for their enforcement. The authority of municipal corporations to impose the cost of paving upon

the property fronting on the street paved, is a part of the power of taxation, and inherently is exercisable without regard to the property owners' consent, and at the sole discretion of the taxing body. The vital necessities of government do not in general permit a review of its exercise of the prerogative of taxation by courts or juries; but the taxing authority may, in its discretion, permit such a review within specified limits. In the class of cases now under consideration it has done so. The right of the city to order the paving of its streets, to determine the kind of pavement, the manner of its doing, the terms of the contract, etc., is independent of the property owner's judgment or consent: Philadelphia v. Brooke, 81 Pa. 23; Philadelphia v. Burgin, 50 Pa. 539; Hutchinson v. Pittsburgh, 72 Pa. 320. But, on the other hand, when the property owner has had certain rights conceded to him, either by statute or by municipal ordinance, the courts will allow him to assert them against the city itself, as well as against the contractor to whose use the city sues: Reilly v. Philadelphia, 60 Pa. 467; Pepper v. Philadelphia, 114 Pa. 96. Appellant's argument asks, "Has a property owner who is no party to the contract any rights superior to those of the parties themselves?" The answer is, Yes, if the law gives them to him. An entirely analogous illustration is that of a mechanic's claim. A contractor has the power to contract debts to material-men and others which shall be a lien against his principal's house. As between himself and his sub-contractor, he may bind himself to pay any price he pleases, but, as between the sub-contractor and the owner, the charge cannot exceed the fair market price. The same defence is given to property owners in the city of Philadelphia as against municipal claims for paving, etc., by the act of April 19, 1843, P. L. 342, and by various other acts and ordinances. The city had the right to revive and ratify the contract with Peters without regard to the appellees' consent: Philadelphia v. Hays, 93 Pa. 72; and it had also the general right to fix the price to be paid for paving. But the act of March 30, 1866, P. L. 354, which authorizes the councils to fix the rate, requires them to do so by ordinance from time to time, and this means by general ordinance. At the time the contract was revived and the work done, the city had by general ordinance fixed the price of such paving at $1.10 a yard. In the face of that ordinance the city could not, by a new contract, have imposed any higher

rate on the appellees for work to be done thereafter, and the spirit, if not the letter, of the act of 1843 equally prevents the city from making in effect such a new contract, by the revival of an old and void one, to the detriment of those interests of the property holder meant to be protected. The act of 1843 allowed the property owner to show in defence that the price charged for the work is "greater than the value thereof;" but, this having been found to be inconvenient in practice, subsequent acts changed the system so far as to permit the city to fix the charge which should not be questionable: See Lea v. Philadelphia, 80 Pa. 315. The city now collects from the property owner, not the value of the work, but its cost as fixed by ordinance; and this mode of ascertaining and fixing the cost is sustained on the ground of the public necessity and convenience, inherent in all rational taxation, that there should be a settled, ascertained, uniform, and practicable method of computing the amount due by the tax-payer. The present case stated shows that the contractor's rights under his contract had been forfeited; that, at the time of the revival by councils, the legal cost of such paving was fixed by ordinance at $1.10; and we are of opinion that such legal cost was all that the appellees could be compelled to pay, either under a new contract or under an old one revived after forfeiture.

Nor is it reasonable to suppose that the councils intended to sanction any higher charge. The appellant's contract was not revived by name or specifically in any way. It got its new life by coming within the general terms of the ordinance of December, 1878. When that ordinance was passed, councils knew that the legal charge had been fixed by the ordinance of April, 1877, and may well have supposed that all subsequent work done under revived contracts, as well as under new ones, would be done under the terms of that ordinance. Their right to have made an express provision to that effect is beyond question, and it is a reasonable construction to imply that condition in the ordinance as actually passed.

The judgment of the court below, having been entered for an amount based on the price under the ordinance of 1877, was correct.

Judgment affirmed.

On June 4, 1890, a motion for a re-argument was refused.