## Philadelphia to use *v*. Bilyeu, Appellant.

*Practice, C. P.—Trial—Motion for judgment non obstante veredicto —Points for charge—Act of April* 22, 1905, *P. L.* 286.

Under the Act of April 22, 1905, P. L. 286, a party has no standing to move for judgment non .obstante veredicto upon the whole record, where he has not at the trial presented a point requesting binding instructions in his favor.

*Practice, C. P.—Trial—Reservation of question of law—Acts of March* 28, 1835, *P. L.* 88, *and April* 22, 1863, *P*. *L.* 554.

A party is not entitled to have reviewed the action of the lower court in refusing a motion for judgment non obstante veredicto upon a question of law reserved, where no exception is taken to such action of the court below.

*Road law—Paving—Assessment bills—Defenses—Act of April* 19, 1843, *P. L.* 342.

Where a city ordinance provides a particular grade for gutters, and for the crown of the pavement in grading and paving streets, unless the chief engineer and surveyors shall certify otherwise, and a contract is entered into by the city with a contractor in accordance with the terms of the ordinance, the contractor cannot recover the amount of an assessment bill against an abutting owner, where it appears that during the progress of the work the chief of the highway bureau changed the grade of the gutter and crown so that when the work was finished there was no gutter on one side of the street, and the

slope of the pavement was such that the abutting owner suffered a special injury in having all the surface drainage thrown on his side of the street, and there stagnating without being carried to a sewer inlet. In such a case the owner is not estopped because he did not object while the work was under way where he had no knowledge whatever that the chief engineer and surveyor had not certified to the change in the specifications of the contract; nor is the owner barred from setting up as a defense his special injury, because the work had been accepted by the city officials; nor is he barred from setting up such a defense by anything contained in the Act of April 19, 1843, P. L. 342.

Argued Oct. 18, 1907. Appeal, No. 161, Oct. T., 1907, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1900, No. 422, M. L. D., on verdict for plaintiff in case of city of Philadelphia to use of Pennsylvania Asphalt Paving Company v. George A. Bilyeu. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Scire facias sur municipal lien for paving. Before SULZBERGER, P. J.

At the trial the trial court gave a full charge, ending with a direction to find for the defendant. Plaintiff's counsel thereupon appealed to the conscience of the court to reverse the direction upon the ground that if the appellate court should reverse, the plaintiff could get no advantage from the victory, since he would be defeated in his remedy on another trial by virtue of limitation provisions in statutes. For a similar reason judgment was entered on the verdict for the plaintiff.

The facts appear by the opinion of the Superior Court.

Verdict and judgment for plaintiff for $359:20. Defendant appealed.

*Errors assigned* were in the following form:

1. The learned judge of the court below erred in directing the jury to find a verdict for the plaintiff.

2. The learned judges of the court below erred in denying the defendant's motion for judgment non obstante veredicto upon the whole record.

*J. Frederick Hartman,* for appellant.—It needs but the cita-

tion of two cases to show that the defense offered by the defendant is proper and tenable in this case: Pittsburg v. Walter, 69 Pa. 365; Phila. to use v. Jewell, 135 Pa. 329.

The ordinance of 1885 entitles the defendant to the kind of pavement therein prescribed and it is not within the power of any official to deprive him of that right. The city itself could not do it without repealing the ordinance, and surely the contractor could not do so: Philadelphia v. Brooke, 81 Pa. 23; Scranton Sewer, 213 Pa. 4; Philadelphia v. Pemberton, 208 Pa. 214.

*Walter Biddle Saul*, with him *E. O. Michener*, for appellee.—It is respectfully submitted, on behalf of the appellee, that the judgment of the lower court should be affirmed. The work for which the claims were filed was done by the use plaintiff and ratified by the city of Philadelphia and the defense which was attempted to be made at the trial is one which the defendant is not competent to make under the law: Philadelphia v. Burgin, 50 Pa. 539; Philadelphia v. Brooke, 81 Pa. 23; Philadelphia v. Evans, 139 Pa. 483; Scranton v. Jermyn, 156 Pa. 107; Fell v. Philadelphia, 81 Pa. 58; Philadelphia v. Gorgas, 180 Pa. 296; Erie v. Moody, 171 Pa. 610; Harrisburg v. Shepler, 7 Pa. Superior Ct. 491; Wabash Avenue, 26 Pa. Superior Ct. 305; Pittsburg v. MacConnell, 130 Pa. 463; Harrisburg v. Baptist, 156 Pa. 526; Hutchinson v. Pittsburg, 72 Pa. 320.

OPINION BY RICE, P. J., July 15, 1908:

This was a scire facias upon a municipal claim for paving the cartway of the street upon which the defendant's premises abut. The defendant pleaded non assumpsit, payment with leave, etc., with notice that he would offer evidence of the special matter set forth in the affidavit of defense. Verdict having been rendered for the plaintiff, the defendant moved for judgment in his favor non obstante veredicto. This motion was dismissed and judgment was entered in accordance with the verdict, whereupon the defendant took this appeal. The only matters assigned as errors are, first, the direction to

the jury to render a verdict for the plaintiff; second, the dismissal of the defendant's motion "for judgment non obstante veredicto upon the whole record."

The Act of April 22, 1905, P. L. 286, provides, inter alia, that whenever upon the trial of any issue, a point requesting binding instructions has been reserved or declined, the party presenting the point may, within certain limitations as to time, move the court to have all the evidence taken upon the trial duly certified and filed so as to become part of the record, and for judgment non obstante veredicto upon the whole record. The motion, for judgment ought to be but is not set forth at length anywhere in the appellant's paper-book, and while the docket entries, as printed, show that such motion was made, they do not show by what authority the court was asked to enter the judgment moved for. If, as may be surmised from the form of the specification of error, the court was asked to exercise the jurisdiction conferred by the act of 1905, the motion was properly refused, because the right there given is conditioned upon the party making the motion having presented, before verdict, a point requesting binding instructions, and the record fails to show that the defendant presented such point.

The power to reserve questions of law, which was given to judges of the district court of Philadelphia by sec. 5 of the Act of March 28, 1835, P. L. 88, was extended to judges of the common pleas by the Act of April 22, 1863, P. L. 554, and still remains notwithstanding the act of 1905. But even if it may be inferred from the assignment of error that the defendant's motion was for judgment non obstante veredicto upon a question of law reserved, the obstacle which prevents him from demanding a review of the court's disposition of that motion is that the record as printed in his paper-book fails to show that it was excepted to. This, it has been held in numerous cases and is apparent from the language of the act, is an essential prerequisite to a review by the appellate court of a judgment entered under this act: Miller v. Hershey, 59 Pa. 64; Northumberland County Bank v. Eyer, 60 Pa. 436; Merkel v. Berks Co., 81 * Pa. 505; Yard v. Pancoast, 108 Pa. 384; Central Bank

of Pittsburg v. Earley, 113 Pa. 477; Lower Province Live Stock Ins. Assn. v. Weikel, 10 Sadl. Rep. 23; s. c., 11 Cent. Repr. 709; Keefer v. Pacific Mutual Life Ins. Co., 201 Pa. 448.

. It follows that in either view of the motion the second assignment of error should be dismissed.

But there is no ground for presumption that the judgment was entered under the act of 1863; therefore, although the defendant did not except to the judgment, he is not precluded from pressing his first assignment of error which is based on an exception to the charge. We therefore proceed to a consideration of the question whether it was proper to give binding instruction in favor of the plaintiff, and in such consideration the general rule, to which this case is not an exception, must be kept in view that when proof of a fact depends upon oral testimony, it is the province of the jury to decide under instructions from the court as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence: Reel v. Elder, 62 Pa. 308.

In the contract under which the pavement was laid the city agreed to pay the contractor for the paving and contingent work done under the contract "in assessment bills made out and signed by the proper officers, or in warrants drawn upon the city treasury," the sum of $2.20 per square yard. The contractor paved the street in accordance with the stipulations of the contract, excepting in the particular to which we shall hereafter refer, and after the completion of the work, an assessment bill, showing the amount of the assessment, the number of square yards of paving for which the defendant was assessed, the rate per square yard, and the frontage of his property on the street, was delivered to the contractor. It is stated in this bill that the measurements were made by H. M. Fuller, the district surveyor, and it was signed by him. On the back are the written approval of William H. Brooks, chief of the bureau of highways, and the certificate of William A. Fredericks, as assistant commissioner of the district, that the "within work has been done in accordance with existing ordinances." No question is raised as to these being the proper

officers to make. out assessment bills, or as to the regularity of the proceedings relative to the filing of the claim, or the issuing and service of the scire facias. Having referred to the matters which are not in dispute we come to a statement of the facts which the defendant relies upon for his defense.

One of the stipulations of the contract was that the contractor should deliver the materials and do the work "in strict and exact accordance with proposals and specifications" attached to and made part of the contract; two of which specifications were as follows: (1) "The finished grade for the gutters shall be generally five inches below the top of the curb, except where a change is directed by the district surveyor to insure proper surface drainage;" (2) "The crowning or rise of the finished pavement from the gutters toward the center of the street shall be at the rate of two and one-quarter feet per one hundred feet, except at intersections, or where the surface drainage demands a different crown, as may be directed by the district surveyor. Gutter or crown stakes must be set every fifty feet."

Another stipulation of the contract was that the contractor should execute and finish the paving "in accordance with all the ordinances and resolutions of councils relating to paving," and to "fully and faithfully comply with all their provisions," one of which ordinances, adopted in 1885, contains this provision: "Whenever a street is graded or paved it shall be so finished and shaped that the gutters will be five inches below the regulation curb elevation, except at city inlets and in streets where the chief engineer and surveyor shall certify that a different depth of gutter is advisable. The crown of the street or cross slope from the middle portion of the street to the gutters shall be at the rate of two feet per one hundred feet of sheet asphalt or a continuous concrete pavement."

There was evidence from which the jury could have found, if the question had been submitted to them, that the district surveyor directed one of his assistants to set the gutter and crown stakes for the paving of the street; that this assistant first set the stakes so as to make the gutters and slope of the pavement conform substantially to the specifications of the

contract and the ordinance of 1885; that after the work of grading was commenced the contractor was stopped, and this assistant of the district surveyor gave the contractor new lines for grading and paving this portion of the street on which the defendant's property abuts, which did away with the crown of the street, and while leaving a six-inch gutter on his side of the street left no gutter on the opposite side; that this change of lines was not made at the request or instance of the contractor; and that the contractor completed the work in accordance with this change.

In rebuttal, the plaintiff introduced the testimony of witnesses from which the jury could have found that a highway inspector of the city was present nearly all of the time during the progress of the work, that Mr. Brooks, the chief of the highway bureau, and Mr. Fredericks, his assistant, came there occasionally and that the former ordered the change; but whether the facts as to these matters (even assuming that they would be controlling, which they would not be) were as testified to was for the jury, not the court, to determine.

Moreover, neither of these officials was the officer named in the specifications or the officer referred to in the ordinance of 1885. Mr. Fuller, the district surveyor, who was the official referred to in the specifications, and Mr. Webster, the chief engineer and surveyor of the city, who was the official referred to in the ordinance of 1885, each testified that he did not order the change, and it was not conclusively established by other evidence—certainly not so conclusively as to warrant the court in assuming it to be an uncontroverted fact—that either of these officials consented to it.

Furthermore, there is no evidence that this change was required "to insure proper surface drainage," as set forth in the specifications, or was "advisable," within the true intent and meaning of the ordinance of 1885. The sole purpose of or occasion for the change, of which any hint is given in the testimony, is that it was to serve the business convenience of the National Biscuit Company, the property owner on the opposite side of the street.

The natural consequence of this illegal departure from the

requirements of the specifications and the ordinance of 1885 was to cast all of the surface drainage at that point upon the defendant's side of the street, and there is evidence from which the jury could have found, if the question had been submitted to them, that it worked special injury to him, differing not only in degree but in kind from any injury or inconvenience to the general public which may have been occasioned by the grade and shape of the pavement as laid. This allegation of special injury to the defendant's property is based on testimony to the effect, first, that the longitudinal slope of the street immediately in front of the defendant's premises is very slight, in consequence of which the surface drainage brought to the gutter at that point is not carried to the sewer inlet, but stagnates; secondly, that if a gutter had been constructed on the opposite side of the street, as the ordinance required, all of the refuse and filth created by forty or fifty teams that back up and stand for loading and unloading at the National Biscuit Company's property, two or three times a day, would be carried into the sewer inlets along the gutter on that side of the street, whereas by reason of the failure to observe the requirements of the specifications and the ordinance all this noxious drainage is thrown on the defendant's side of the street, and at times, particularly in the summer, this renders the gutter in front of his premises exceedingly offensive.

It is argued that as the variation from the specifications and the ordinance was visible and must have been known to the defendant before the paving was completed, it was his duty if he desired to raise any objection to it, to inform the city and take some steps to stop the work, and not having done so, he cannot raise the objection now. But the variation would not have been in violation of the ordinance, if the chief engineer and surveyor had certified that it was advisable, and there is no evidence that the defendant knew that he had not so certified. We do not admit that the defendant would have been estopped, even if he had known that fact before the work was completed, but it is unnecessary to go into that question, for it is very clear that, in the absence of evidence that he had such knowledge, the court would not have been justified in

charging the jury that he was estopped by his mere silence. For a statement of the principles and a citation of authorities which fully support this conclusion we refer to Wickham v. Twaddell, 25 Pa. Superior Ct. 188, at pages 194, 195 and 196.

Another objection urged by appellee's counsel against the defense is, that the admitted variation from the specifications and the ordinance was ratified and waived. It should be noticed that there is no evidence of the city's ratification and waiver except that of which we have given a summary above; there was no such action by the corporate authorities by resolution or ordinance as was shown in McKnight v. Pittsburg, 91 Pa. 273, and City v. Hays, 93 Pa. 72. In support of their contention counsel cite Philadelphia v. Brooke, 81 Pa. 23; Fell v. Philadelphia, 81 Pa. 58; Erie v. Moody, 171 Pa. 610; Philadelphia v. Gorgas, 180 Pa. 296; Harrisburg v. Shepler, 7 Pa. Superior Ct. 491; Wabash Avenue, 26 Pa. Superior Ct. 305. These and other cases of the same class do hold that there are many questions relating to the formal details of agreements between the city and its contractors, and to their execution and performance, which cannot be raised by the defendant in such a proceeding as this, where it appears that the work has been accepted by city officials. But other cases show quite as distinctly that it is not an invariable rule that no question whatever which relates to the performance of the contract can be raised by the defendant in such a proceeding. In Pepper v. Philadelphia, 114 Pa. 96, a principle was enunciated which would entitle the defendant to go to the jury, unless he is precluded by the act of 1843 to which we shall refer later. Justice TRUNKEY, who delivered the opinion of the court, said: "But in this state, where by the laws and ordinances the contractor receives the assessment bills in payment from the city, and it turns out that his work was so defectively done as to be worthless, he has no just right to recover in an action against the property owner, and the latter is not precluded from the defense because he is not a nominal party to the contract. If the work was substantially done as contracted for, answers the intended purpose, but in some minor particulars which do not materially affect its usefulness

the contractor failed, then the property owner may have deduction for such failure. This is not the case of a municipality contracting for a public improvement, accepting it, and making payment therefor absolutely, and afterwards itself collecting the assessments; and it is unnecessary to consider whether in that case the property owner could allege defective work as a matter of defense against the tax." This principle was recognized in Erie v. Butler, 120 Pa. 374, in Philadelphia v. Pemberton, 208 Pa. 214, and in many intermediate cases which we need not cite.

The next question to be considered is whether the first section of the Act of April 19, 1843, P. L. 342, prevents the defendant from setting up a defense upon the facts to which we have alluded. This is a local act, applicable only to Philadelphia, and according to Craig v. Philadelphia, 89 Pa. 265, and Pepper v. Philadelphia, 114 Pa. 96, applicable only to certain portions of the city. The act declares, inter alia, that upon the trial of any action, whether of scire facias or otherwise, for the recovery of any sum claimed "for water pipe, curbing, paving, work done and materials furnished, and for which the said district now by law have a lien, . . . . it shall only be lawful for the defendant to deny that the said work was done or materials furnished, or prove that the price charged therefor is greater than the value thereof, or that the amount claimed has been paid or released." If the words of the section which specify the three defenses that may be set up be taken literally and without regard to the context, it would be impossible for the defendant to show that his property was not liable to assessment at all, because, for example, the pavement was laid in rural territory, or the street had been previously paved by the municipality at the expense of the abutters, or statutory conditions precedent to paving at the expense of the abutters had not been complied with. These are extreme illustrations, it is true, but they are pertinent, because they bring prominently into view the consequences of holding that the legislature intended to shut out every defense excepting those specifically mentioned, even though it be a defense based on a violation, to his injury, of a provision of the constitution, or of

a statute, or of an ordinance, intended for the benefit and protection of the persons sought to be charged. The act has not been so construed. In Commissioners of Kensington v. Keith, 2 Pa. 218, notwithstanding the contention that the act of 1843 prohibited the defense, the defendant was permitted to defend against a claim for curbing and paving upon the ground that the conmmissioners had exceeded the statutory limitation of their power to pave; namely, that the paving "be not less in length than one nor exceeding three squares at one time." In Reilly v. Philadelphia, 60 Pa. 467, it appeared that the paving was done under a resolution requiring the contractor employed to do the work to be selected by a majority of the lot owners representing at least one-half of the feet front to be paved. The fact that the contractor was not so selected was directly put in issue by the defendant's special plea; and there was no evidence that he was selected by any of the lot owners. For this reason the judgment, which was entered for defendant non obstante veredicto on the reserved point, was sustained on writ of error. In Fell v. Philadelphia, 81 Pa. 58—a case much relied on by appellee's counsel because it decided that the act of 1843 was then in force in what were, at the date of its enactment, within the incorporated districts of Philadelphia county—the defense was sustained, that the contract was made without compliance with the provisions of a general ordinance requiring certain notices to be published for two weeks before any contract for paving any street or streets should be entered into. Justice WARREN J. WOODWARD thus summed up the decision: "But this is not a question between the city and the contractors, nor between the contractors and the property owners who employed them. It arises between the city and the defendant. The latter had assumed no duty expressly or by implication. He can be made subject to a legal obligation only where the power conferred on the municipal authorities has been legally exercised. Like Phila. v. Lea, 5 Phila. 77, this is 'a case depending wholly on the forms and requisitions of law, and in no degree on consent or contract, in which one of the forms, one of the conditions which the law itself has imposed, is wholly wanting.'

It is within the principle of Reilly v. Philadelphia, 60 Pa. 467, of the Phila. v. Stewart, 1 Weekly Notes of Cases 242, and of Pittsburg v. Walter, 69 Pa. 365. The city could have waived irregularities and defects of form. The property owners who entered into the agreement with the contractors, by leaving the authoritiy they had conferred unrevoked, could not make those irregularities and defects subjects of complaint. But jurisdiction over the defendant and his property could be obtained only by pursuing rules prescribed by law, and the record proves that these rules could not possibly have been observed." It is important to notice, first, that the law here referred to was not an act of the legislature, but a city ordinance, secondly, that so far as the restriction of the act of 1843 is concerned, the case plainly recognizes a distinction between questions relating purely to performance of contract stipulations and questions relating to the observance of the conditions or requirements of general city ordinances, governing the subject-matter. The principle was thus stated by the present chief justice in Philadelphia v. Jewell, 135 Pa. 329—a case where the act of 1843 was directly under consideration: "The right of the city to order the paving of its streets, to determine the kind of pavement, the manner of its doing, the terms of the contract, etc., is independent of the property owners' judgment or consent: Philadelphia v. Brooke, 81 Pa. 23; Philadelphia v. Burgin, 50 Pa. 539; Hutchinson v. Pittsburg, 72 Pa. 320. But, on the other hand, when the property owner has had certain rights conceded to him, either by statute or municipal ordinance, the courts will allow him to assert them against the city itself, as well as against the contractor to whose use the city sues: Reilly v. Philadelphia, 60 Pa. 467; Pepper v. Philadelphia, 114 Pa. 96." Of course, the ordinance of 1885 could not have prevented the councils of 1900 from ordaining that the pavement in question should be laid precisely as it was laid, and if they had so ordained, the property owner would have had no right to have the question whether this was a proper exercise of discretion submitted to a jury. But the councils did not so ordain; the ordinance of 1885 was in full force at the time the contract was entered into and the

pavement was laid. The rule prescribed by that ordinance as to the shape and grade of the pavement was not only impliedly but expressly a part of the contract, and even if no direct or indirect allusion to it had been made in the contract, it would have been binding upon the contractor and every city official who, according to the evidence, had anything to do with the performance or the acceptance of the work. The only city official who, under the ordinance, had any discretionary power in the premises was the chief engineer and surveyor, and according to his undisputed testimony his power was not exercised. Therefore the case before us is in the same situation as if no such power had been given to that officer. It is not pretended that the ordinance is merely directory, and we think it cannot be reasonably claimed that the owners of abutting property have no right growing out of it. It relates to a subject in which their interests are materially and directly involved, and it may be fairly presumed that this was one of the considerations which led to its adoption. In short, while the abutters, even though they are to pay the cost of the pavement, have no natural or statutory right to demand that such rule as to the grade and shape of the pavement shall be observed by the corporate authorities of a city, it is within the power of such authorities to create the right by ordaining the rule. It is not too much to say then, that the right asserted by the defendant was "conceded to him" by the ordinance, and therefore that the case is within the principle enunciated in Philadelphia v. Jewell, 135 Pa. 329. If in disregard of that right and in violation of the ordinance the contractor so shaped and graded the pavement in front of his property as to cause special injury, he ought in justice and fairness to be permitted to give evidence of these facts in defense to the claim, and to have that evidence submitted to the jury. We are of opinion that he is not precluded therefrom by the action of city officials who had no authority to make, rescind or waive the rule, or by the act of 1843.

The remaining objection urged by the appellee is that the defense is not good "because," to quote from the brief of counsel, "the defect and irregularity alleged and complained of is

not a defect or irregularity connected in anyway with the portion of the work for which the property owner is required to pay." The best answer to this objection is to refer to the statement of facts made in a former part of this opinion; or rather the facts which a jury could have found from the testimony submitted by the defendant. In view of this testimony it is impossible for us to agree with the appellee's counsel that the defect complained of, if it be regarded merely as a defect, is not connected in anyway with the portion of the work for which the defendant is required to pay. While it may be true that even in the case of a violation of the ordinance of 1885 in the construction of the pavement in another part of the street, which violation did not affect the defendant's property injuriously, he could not upon that ground alone defend against the claim, yet if his property is injuriously affected by the violation of the ordinance, there is no rule or principle of law which would prevent him from defending upon that ground, even though the pavement on his side of the street was properly constructed. The cases cited by appellee's counsel may, perhaps, sustain the proposition that a property owner can complain only of defects in the pavement which affect his own property; but even if that be the rule and even if the rule be applicable to a case where the defect was occasioned by the violation of a controlling city ordinance, as well as of the stipulations of the contract, it is not applicable to this case if the jury find from the testimony to which we have alluded that the defendant's property upon which the assessment was laid was injuriously affected. As already suggested, the defendant was entitled to have this question of fact submitted to the jury.

The judgment is reversed and venire facias de novo awarded.