# Philadelphia to use, Appellant, *v.* Bilyeu.

*Road law—Paving—Assessment bills—Defenses—Municipal lien.*

1. In an action by a contractor on an assessment bill for paving against an abutting owner, no recovery can be had where the evidence shows that the contractor departed so far from the specifications of the contract and municipal ordinance that when the work was finished there was no gutter on the side of the street opposite the plaintiff's property, and that the slope of the pavement was such that the abutting owner suffered a special injury in having all the surplus drainage, much of which was of an offensive character, thrown on his side of the street, and there stagnating without being carried to a sewer inlet.

. 2. In such a case the abutting owner is not bound to prove that the market value of his property was lessened by the defective paving. He is entitled to have the contract performed substantially in all things according to its terms and if it is not performed, and he suffers a special injury therefrom, he cannot be called upon to pay the paving claim; nor is the conclusion that he was specially and injuriously affected by the contractor's failure to perform his contract in good faith and substantially in accordance with its terms, rebutted by testimony that in the opinion of experts, his property was not depreciated in value.

Argued Dec. 20, 1910. Appeal, No. 218, Oct. T., 1910, by plaintiff, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1909, No. 422, on verdict for defendant in case of Philadelphia to use of Pennsylvania Asphalt Paving Company v. George A. Bilyeu. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Scire facias sur municipal claim for paving. Before WILTBANK, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[The question for you is not whether this property has been damaged to the extent of $406. That has nothing to do with the case. The question for you is whether this work, no matter how done, whether lawfully or unlaw-

fully (for that point has been reserved), has benefited this property. Was it a local improvement? If it was a local improvement to this property, then the property must contribute special taxation to pay for that local improvement, by way of relief of the general taxation of the city.

When streets are made under ordinary circumstances, by virtue of the general law, they should be paid for out of the general taxation of the city, but if it is found that the construction of the street benefits the houses along there, the separate lots, specially, then it is only just and equitable that those special lots should bear their share of the taxation and so relieve the general public from the burden.] [2]

[The question for you to determine is whether this paving benefited the defendant's lot, and if you find that it did not benefit the defendant's lot it will be your duty to find a verdict for defendant. How are you going to inquire? Mr. Massey says that it did not damage it, but he says it did not benefit it, so Mr. Massey's evidence is not of value to us in this instance. What do you find? You find here a street that is not on a level. It is higher on one side than on the other. It is up towards the north side where that bakery is, and it is down on the south side where this man has his lot. That is agreed to and there is no question about that. What is the consequence? The consequence is that all the flow is from the north side down to the south side. Is that a benefit to the defendant's lot? If you find it is, under my general instructions then you will find a verdict for plaintiff to the extent of the benefit. You may find that the benefit is such as to justify you in giving him a verdict for his claim. The evidence is that the offal from the other side (I use that general term and you will understand what I mean), comes flowing over from the north down to the south on the gutter way of this lot and of the adjacent lots, and it flows off to a sewer or inlet which is in that region. It flows off slowly. It produces (if you find it so) an unnatural collection of stuff there in the gutter.

I leave to you as a question of fact whether it does so do. If you find that it does so do, and that it produces these unpleasant odors that have been testified to, then you will be obliged to find that that benefits his lot or else to give a verdict for defendant under my instructions.] [3]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1) in refusing binding instructions for plaintiff; (2, 3) portions of charge as above, quoting it.

*Walter Biddle Saul*, with him *E. O. Michener*, for appellant.—The time has long since passed when a jury is at liberty to say whether or not the paving of a street in a built-up portion of a city is or is not a benefit: Alcorn v. Philadelphia, 112 Pa. 494.

If the paving was an original improvement, the defendant was liable for the proper proportion of the cost and he is not permitted to defeat recovery on the ground that the improvement was not a local benefit or that his property after the improvement had depreciated in value: Michener v. Philadelphia, 118 Pa. 535; Harrisburg v. McCormick, 129 Pa. 213; Allegheny v. R. R. Co., 138 Pa. 375; Witman v. Reading, 169 Pa. 375.

*J. Frederick Hartman*, for appellee.

OPINION BY RICE, P. J., July 13, 1911:

At the first trial of this case the court gave binding direction for the plaintiff, and, upon appeal, the judgment was reversed with a venire facias de novo: Philadelphia v. Bilyeu, 36 Pa. Superior Ct. 562. At the second trial the court instructed the jury that the question for them to determine was whether the pavement benefited the lot, and, if they found that it did not benefit it, it would be their duty to render a verdict for the defendant. The jury found for the defendant, and from the judgment on the verdict the plaintiff took this appeal.

As this was the first paving of a street in the built-up part of a city, there is much force in the contention that the case was submitted to the jury upon an erroneous theory as to their functions in a suit to enforce a municipal claim for an assessment upon an abutting property, according to the foot-front rule, of a proportionate part of the cost of a local improvement: Michener v. Philadelphia, 118 Pa. 535; Harrisburg v. McCormick, 129 Pa. 213. But if binding direction for the defendant would have been justified under all the evidence, the plaintiff has no just cause to complain of the instructions that were given. We therefore proceed to a discussion of that question.

One of the stipulations of the contract under which the paving of the cartway of the street was done was that the contractor should do the work in strict and exact accordance with the proposals and specifications attached to and made part of the contract. Two of these specifications were as follows: 1. "The finished grade for the gutters shall be generally five inches below the top of the curb, except where a change is directed by the district surveyor to insure proper surface drainage." 2. "The crowning or rise of the finished pavement from the gutters toward the center of the street shall be at the rate of two and one-quarter feet per one hundred feet, except at intersections, or where the surface drainage demands a different crown, as may be directed by the district surveyor. Gutter or crown stakes must be set every fifty feet." Another stipulation of the contract was that the contractor should execute and finish the paving in accordance with all the ordinances and resolutions of councils relating to paving, and should fully and faithfully comply with all their provisions. One of the city ordinances, adopted in 1885, contains this provision: "Whenever a street is graded or paved it shall be so finished and shaped that the gutters will be five inches below the regulation curb elevation, except at city inlets and in streets where the chief engineer and surveyor shall certify that a different depth of gutter is advisable. The crown of the street or cross slope from

the middle portion of the street to the gutters shall be at the rate of two feet per one hundred feet of sheet asphalt or a continuous concrete pavement."

Certain material facts, which on the first trial depended upon oral testimony and were for the determination of the jury, were, upon the second trial, brought upon the record by the express admission of the parties, or were not in dispute under the evidence.

1. According to the lines established and stakes set by the city official, gutters were provided for on both sides of the street, but the contractor, while constructing a six-inch gutter along the defendant's side of the street, omitted the gutter along the property of the National Biscuit Company on the immediately opposite side of the street, and laid the pavement so that it sloped directly from the level of that property (which was above the grade of the crown of the street), to the center or crown of the street and thence by a sharper grade to the gutter on the south side.

2. It was testified by one of the defendant's witnesses, and it was undisputed, that from the south curb line in front of the defendant's premises the pavement was laid with a proper rise to the center of the street, in accordance with the plans and specifications; but it is an obvious and undisputed fact that, owing to the general pitch of the pavement, more of the surface drainage is brought to the gutter on the defendant's side of the street than would be if the contractor had conformed strictly to the terms of its contract.

3. It should be noticed, however, that there is no evidence that the gutter is not adequate to carry off all the water that is brought to it; that is, there is no evidence that it overflows upon the defendant's premises. We quote from his testimony upon this subject, omitting, for the present, reference to that part of it which relates to the special conditions that he claims make the construction of the pavement objectionable. "The grade of the street is sufficient to carry the water crosswise which runs into

the gutter there.  It has sufficient grade on the street running lengthwise to carry the water to the inlet at either corner. . . ."

4. There is no evidence that the admitted departure from the general terms of the specifications and the ordinance had the sanction of the city officials mentioned therein, or of any other city official having authority in the premises.  Indeed, all the testimony upon the subject, that was introduced by either party, tends to show the contrary, and, for present purposes, it must be assumed that it was without municipal authority.

It will be well to stop at this point and consider the question of the defendant's liability under the admitted facts.  We quote at length from the opinion of the court in Pepper v. Philadelphia, 114 Pa. 96: "Municipal authorities in the making of street improvements authorized by law to be made at the expense of the owners of lands to be benefited thereby, are to a certain extent the agents of such owners.  Contracts lawfully made at the discretion of the authorities, are binding upon the landowners, though injudiciously made; but the owners are entitled to have such contracts performed substantially in all things according to their terms, and the authorities have no power to dispense with such performance to the gain of the contractor and the loss of the property owners.  If the authorities are about to accept and pay under a contract, for what in substantial and important respects has not been performed, the property owners may have remedy to enjoin the wrongful payments: Schumm v. Seymour, 24 N. J. Eq. 143.  There, it was held that the remedy is in equity.  But in this state, where by the laws and ordinances the contractor receives the assessment bills in payment from the city, and it turns out that his work was so defectively done as to be worthless, he has no just right to recover in an action against the property owner, and the latter is not precluded from the defense because he is not a nominal party to the contract.  If the work was substantially done as contracted for, answers the intended

purpose, but in some minor particulars which do not materially affect its usefulness the contractor failed, then the property owner may have deduction for such failure." In Pittsburg v. MacConnell, 130 Pa. 463, an affidavit of defense was held by the common pleas to be insufficient which set forth that the work and materials were not offered or given to the lowest responsible bidder, that the contract was fraudulently let, and that the work was insufficiently and badly done. In affirming the judgment, the Supreme Court said: "As she was a stranger to the contract, she would have no standing to defend upon the grounds named, unless she shows special injury to herself by reason thereof, and that special injury must relate to so much of the work as was charged against her property. The city is not seeking to hold her for any portion of the work done elsewhere. Upon this point her affidavit is not only lame and evasive, but is silent." The doctrine as to substantial performance, and as to the liability of the property owner, notwithstanding minor defects and irregularities which do not specially injure him or do not materially affect the usefulness of the pavement as a whole, has been affirmed in many later cases. Applying it to the admitted facts heretofore alluded to, we are constrained to the conclusion that, if the contractor's departure from the specifications of its contract and the provisions of the ordinance of 1885 had been made in another part of the street, remote from the defendant's property, as, for example, in another block, it would not, standing alone, constitute an absolute legal bar to recovery against the defendant. And we are not convinced that a different conclusion ought to be reached merely because the variation occurred on the immediately opposite side of the street, it being admitted that the part of the pavement on his side of the street was constructed in accordance with the plans and specifications. To hold otherwise would be to hold that any owner of abutting property, anywhere along the line of the improvement, might successfully defend against the assessment upon his

property, by proof of such variation from the terms of the contract and the provisions of the ordinance as has been described, even though such variation was so remote from his property as not to specially injure him or affect him in any way. This extreme position would not be sustained by the authorities.

But the defense did not rest alone on the admitted facts to which we have alluded, but rested also on uncontradicted evidence that, if a gutter had been constructed on the opposite side of the street, the refuse and filth created by forty or fifty teams that back up and stand for loading and unloading at the National Biscuit Company's property several times a day, would be carried into the sewer inlets along the gutter on that side of the street, whereas by reason of the contractor's failure to observe the requirements of the specifications and the ordinance, this noxious drainage is thrown on the defendant's side of the street and, at times, particularly in summer, this renders the gutter exceedingly offensive to the occupants of the dwellings on that side of the street. One of the witnesses describes the conditions as follows: "We got all the drain from the north side of the street onto the south side. Q. What kind of drain? A. All the urine from the teams that are brought there and anything that collects in the street where those horses load and unload several times a day from early in the morning until night." The defendant describes the conditions as follows: "The property on the opposite side of the street is occupied by the National Biscuit Company. They have from thirty to forty teams loading there every morning from six to eight o'clock. In the morning their horses stand there, and all the overflow and urine from these teams flows to the south side of the street, into the gutter on the south side. The pitch lengthwise of the street is sufficient to carry it off but we have it crosswise from the north to the south, flowing into our gutter. There is no gutter on the north side of the street to take off the waste or overflow from their property on their side of the street, as it should be."

Again, he says that the "nature of the water that runs there is not like fresh water that has speed to it to run right off. It runs sluggish, it will evaporate and sometimes dry out with the sun before it will reach the inlet." Similar evidence was given by other witnesses. Evidence to the same effect was given on the former trial; but, as it all came from the defendant's witnesses, we stated that it was the province of the jury to determine whether the result of the admitted departure from the requirements of the specifications and the ordinance was to work special injury to the defendant, differing not only in degree, but in kind, from any injury or inconvenience to the general public, which may have been occasioned by the grade and shape of the pavement as laid. We did not mean to be understood as saying (and our language does not necessarily bear that construction) that if the jury found the facts as above stated they would be at liberty to find that this was not a special injury to the defendant. But on the second trial the testimony of the defendant's witnesses upon this point was not only uncontradicted, but was corroborated by the testimony of Bertha Reaf, the only witness called by the plaintiff who was qualified to testify as to the conditions. It is true, that Mr. Massey, a real estate expert called by the defendant, testified that on the occasion that he visited the property for the purpose of examining it he did not notice any smell, and that in his opinion the defendant's property had not been damaged by the failure of the contractor to place a curb on the north side of the street. But a scrutiny of the whole of his testimony shows that his opinion was based on an assumption, not of the nonexistence of the facts to which the other witnesses had testified, but of their immateriality. This is shown very clearly by the following question and answer: "Q. In view of the testimony given here on both sides, that those smells in the summer time are offensive, you having heard them testify, will you state whether that does not damage this property and make it less desirable than it would be if the street were properly

laid?　A. I think not.　I do not see any difference at all."
It is thus seen that his testimony raises no conflict as to
the physical results flowing from the contractor's failure
to conform to the requirements of its contract and the
ordinance.　Without further elaboration we conclude that
a verdict that the physical conditions as described by the
other witnesses on both sides did not exist, could not be
reached without a capricious disregard of apparently
truthful testimony that was in itself probable and was
not at variance with any proved or admitted facts.　This
being so, it was not necessary to submit the question of
special injury to the jury in order to have the facts deter-
mined, as it might have been if they had rested solely on
the testimony, though uncontradicted, of the defendant's
witnesses.　It remains to determine the legal conclusions
flowing from the facts.　In view of the existing and obvious
conditions at the time the pavement was laid, that is, the
location of such an establishment opposite the defendant's
premises and the attendant incidents of the business de-
scribed in the testimony, there was particular reason why
the requirements of the specifications and the ordinance
should be strictly complied with, and particular reason why
they should not be departed from in the manner described.
And in view of the uncontradicted evidence as to the result
of such departure, it is impossible to avoid the conclusions
that the contract was not substantially performed, so far
as the pavement in front of the defendant's premises was
concerned, and that the contractor's failure materially
and injuriously affected him.　The defendant was not
bound to go farther and prove that the market value of his
property was lessened.　Nor is the conclusion that he was
specially and injuriously affected by the contractor's
failure to perform its contract in good faith and substan-
tially in accordance with its terms, rebutted by testimony
that, in the opinion of experts, his property was not de-
preciated in value.　As was said in Pepper v. Philadelphia,
144 Pa. 96, he was entitled to have the contract performed
substantially in all things according to its terms, and, as

was emphatically declared in Philadelphia v. Pemberton, 208 Pa. 214, "Gross negligence in doing the work or a willful departure from the terms of the contract would defeat a recovery for any part of the price." We conclude that this is a case where, under all the evidence, the court would have been justified in declaring as matter of law, that a complete defense to the claim was made out.

The judgment is affirmed.